Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


## OPINION

No. 04-10-00830-CV

**ESTATE OF** Gilbert M. **DENMAN** Jr., Deceased

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2004-PC-1687 C
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:  November 23, 2011

AFFIRMED

This is an appeal from a probate court order granting a motion for summary judgment filed by appellees The Trust Company, Trinity University, and the San Antonio Museum of Art (collectively "The Trust Company"), and denying a motion for summary judgment filed by appellant Wendel Denman Thuss ("Thuss").  The controversy between the parties concerns whether Thuss is entitled to reimbursement or a "grossing up" from the Estate of Gilbert M. Denman Jr., Deceased, for certain taxes allocated and charged to a ranch he received as a bequest in Denman's will.  The probate court, by granting summary judgment in favor of The Trust Company and denying Thuss's motion for summary judgment, found Thuss was not entitled to

reimbursement or a grossing up. On appeal, Thuss raises five issues challenging the summary judgment order.

## BACKGROUND

This case appears in this court for the second time. In 2008, Thuss filed an appeal in this court following the probate court's determination that Denman's will did not contain a "specific reference" to the federal generation-skipping transfer ("GST") tax with regard to the bequest of the El Capote Ranch to Thuss, and therefore, section 2603(b) of the Internal Revenue Code required the tax to be allocated and charged to the Ranch. *Estate of Denman*, 270 S.W.3d 639, 648 (Tex. App.—San Antonio 2008, pets. denied) ("*Denman I*"). However, in a footnote, this court noted that whether Thuss might have a viable state law claim for reimbursement for the amount of the taxes paid, assuming Denman's intent was that Thuss received the full value of the bequest, was not before the court. *Id.* at 646 n.3. This footnote seems to have prompted the subsequent action, which led to this appeal.

In *Denman I*, this court provided a detailed rendition of the relevant background facts. Accordingly, rather than restating those facts, we have provided an excerpt from our previous opinion, and as necessary, have supplemented it with additional background information.

> In 1988, Gilbert Denman . . . executed a holographic will. Between 1991 and 2002, he executed four codicils to the Will. In Article XIII of the Will, [Denman] bequeathed one-half of the residuary of the estate to Trinity [University] and the other half to The Trust Company and [the independent coexecutor] as trustees of a trust ("the Trust") created in the Will for the benefit of the [San Antonio] Museum [of Art]. In 2002, [Denman] executed Article IV of the codicil to the Will in which he bequeathed to Thuss, his third cousin, all of his real property in Guadalupe and Gonzales Counties as well as the animals and farm equipment thereon. This property is known as El Capote Ranch ("the Ranch"). The parties do not dispute that [Denman's] bequest to Thuss gave rise to the federal GST tax imposed by Chapter 13 of the Internal Revenue Code. *See* 26 U.S.C. § 2601.

[Denman] died on May 16, 2004, and the Will was admitted to probate in June of that year. In August 2005, The Trust Company and [the independent coexecutor] filed the estate's federal tax return. The return, which was signed by [the independent coexecutor] and a representative of The Trust Company, apportioned and charged payment of the GST tax to the Ranch bequeathed to Thuss. The amount of the GST tax as apportioned and charged in the tax return was $913,868.

Thuss disagreed with the position taken by The Trust Company and [the independent coexecutor] in the federal tax return. He contended Article XII of the Will, which provides for allocation of taxes, removed the GST tax burden from him as the transferee of the Ranch and placed it on the residuary estate. Because of Thuss's contention, The Trust Company and [the independent coexecutor], as coexecutors and co-trustees, filed a petition in the probate court seeking a declaratory judgment that the GST tax should be allocated and charged to the property transferred to Thuss. They argued section 2603(b) of the Internal Revenue Code mandates the tax on a generation-skipping transfer be charged to the property transferred unless otherwise directed by the governing instrument through a "specific reference to the tax imposed" under Chapter 13 and the Will did not contain the required specific reference. *See id.* § 2603(b). Thuss counterclaimed, asserting that because Article XII of the Will specifically referred to the [generation-skipping transfer] tax the transfer tax burden should fall on the residuary estate.

After The Trust Company and [the independent coexecutor] filed a motion for summary judgment, [the independent coexecutor] changed his position on the tax burden, deciding his grandson was correct and that [Denman's] intent as expressed in the Will was that the GST tax be imposed on the residuary estate. As a result, [the independent coexecutor] obtained new counsel and, solely in his capacity as coexecutor, filed amended petitions generally adopting Thuss's position. [footnote omitted]

The Trust Company, joined by Trinity [University], filed an amended motion for summary judgment, [the independent coexecutor] and Thuss filed a cross-motion for summary judgment, and the probate court heard argument on all the motions. The court rendered a final judgment on November 9, 2007, granting the motion for summary judgment filed by The Trust Company and Trinity [University] and denying the one filed by [the independent coexecutor] and Thuss. The probate court declared the Will did not direct the GST tax for the Ranch to be paid from the residuary estate so "the GST tax must thus be charged to such property," i.e., the Ranch. The probate court impliedly found the Will did not contain a sufficiently specific reference to the GST tax to remove it from the statutory scheme of section 2603(b) of the Internal Revenue Code. Denman and Thuss appealed.

*Id.* at 641-42.

In *Denman I*, the parties agreed the devise of the Ranch to Thuss was a generation-skipping transfer as defined by section 2611 of the Internal Revenue Code. *Id.* at 645. They also agreed the transfer of the Ranch was subject to the GST tax. *Id.* (citing 26 U.S.C. § 2601). Later, after prompting at oral argument, Thuss conceded that federal law mandated the GST tax be charged to the Ranch unless the Will directed otherwise "by specific reference to the tax imposed by section 2603(b)," which provides that unless otherwise directed by the governing instrument by specific reference to the tax imposed, the tax imposed on a generation-skipping transfer must be charged to the transferred property. *Id.* (citing 26 U.S.C. § 2603(b)). The question on appeal was whether Article XII of Denman's will specifically referred to the GST tax as one of the taxes to be paid by the residuary estate. *Denman*, 270 S.W.3d at 645-46.

In *Denman I*, prior to his concession at oral argument, Thuss devoted much of his brief to arguing Denman's intent. *Id.* at 646. However, at oral argument, the parties agreed, as did we, that section 2603(b) controlled regardless of Denman's intent, holding Thuss's intent arguments were misplaced and the only relevant inquiry was whether Article XII of the will contained a specific reference to the GST tax as required by section 2603(b). *Id.* The presence or absence of the statutorily mandated specific reference would determine whether the GST tax was charged to the Ranch, i.e., to Thuss, or would be paid out of the residuary.

Article XII of Denman's will provided:

> Any transfer, estate, inheritance, succession and other death taxes which shall become payable by reason of my death shall be apportioned as follows: Any taxes attributable to any property passing under my exercise of powers of appointment in paragraph X [and I believe there will be no taxes on this exercise of my powers of appointment as they were limited in the case of my grandmother's will and as I restricted and relinquished those powers under the gift and legacy by my grandfather prior to 1952 in order to make them nontaxable] shall be allocated on a pro rata basis to that legacy and shall be paid out of the property thereby transferred, any other such taxes shall be paid out of my residuary estate.

*Id.* at 645. After reviewing federal tax court cases, which we determined were controlling pursuant to the supreme court's decision in *U.S. v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 580 (Tex. 1964), we held Article XII of the will did not contain a sufficiently explicit reference to the GST tax. Accordingly, without a specific reference, section 2603(b) applied and mandated the GST tax be allocated and charged to the Ranch, which made Thuss liable for the tax payment out of his bequest. *Id.* at 648.

However, in our discussion of the inapplicability of the testator's intent, this court included a footnote which stated:

> The issue of whether a devisee may have a viable claim under state law for reimbursement for the amount of taxes paid where the testator's clear intent was for the devisee to receive the full value of the bequest is not before us.

*Id.* at 646 n.3. Approximately one month after our opinion issued, Thuss sent a letter to The Trust Company requesting reimbursement for any GST taxes charged to and paid from the bequest of the Ranch:

> As a beneficiary subject to the Generation Skipping Transfer Tax under the Will of Gilbert M. Denman Jr. ("The Will") and pursuant to the ruling of the 4th Court of Appeals, barring review by the Texas Supreme Court, property to be passed to me will bear the burden of the Generation Skipping Transfer Tax. To effect the intent of the testator and pursuant to the specific directive contained in Section XII of The Will, I seek reimbursement for all taxes assessed and borne by the property passed to me.

According to Thuss, The Trust Company did not respond to the letter, prompting Thuss to write a second letter to The Trust Company in March 2009. This time, The Trust Company responded, indicating it disagreed that Thuss was entitled to reimbursement. Accordingly, on April 6, 2009, and after the supreme court had denied his petition for review in the original appeal, Thuss filed an action for declaratory judgment in the probate court seeking a judicial declaration that, based on Denman's intent, he was entitled to reimbursement or "grossing up" of

his devise from the estate for any taxes charged to the Ranch. More specifically, he was entitled to receive a transfer of property including the Ranch and such amounts to ensure that he ultimately receives the Ranch intact, unreduced by the GST tax.

Thereafter, Thuss and The Trust Company moved for summary judgment. As noted above, the trial court denied Thuss's motion and granted the one filed by The Trust Company. Thuss perfected this appeal.

### ANALYSIS

On appeal, Thuss raises five issues, contending the trial court erred in denying his motion for summary judgment and granting The Trust Company's motion for summary judgment because:

• Thuss is entitled to obtain reimbursement from the estate for the GST taxes charged to the Ranch because Denman's clear intent was that Thuss receive the full value of the bequest free and clear of taxes;

• the bequest to Thuss should be "grossed up" to include money to pay the GST tax due as a result of the bequest because Denman clearly intended the Ranch to pass to Thuss intact and free and clear of taxes;

• Thuss is not precluded from obtaining a declaration about Denman's intent to pass the property free and clear of taxes even though that claim was not raised in the prior proceeding because ordinary principles of res judicata and collateral estoppel do not apply in probate proceedings;

• Thuss's declaratory judgment action about Denman's intent is not barred by limitations because: (1) the underlying liability of the property for the GST tax was not determined until the court's opinion in *Denman I* was final; (2) there was no controversy between the parties about Denman's intent, and therefore no accrual of a cause of action, by April 6, 2005–four years before the action was filed; and (3) no distribution has been made; and

• the trial court erred in sustaining The Trust Company's objections to Thuss's summary judgment evidence.

### *Objections to Summary Judgment Evidence*

As noted above, both parties filed motions for summary judgment. In addition to responding to Thuss's motion for summary judgment, The Trust Company filed objections to certain summary judgment evidence relied upon by Thuss. Specifically, The Trust Company objected to three letters attached to Thuss's affidavit: two letters authored by Thuss and one by The Trust Company's attorney. The letters authored by Thuss were those sent to The Trust Company after *Denman I* in which Thuss demanded reimbursement. The letter from The Trust Company attorney merely asserts disagreement with Thuss's position regarding reimbursement. The Trust Company objected to these letters, arguing they were irrelevant, and the two authored by Thuss were hearsay as well as conclusory statements of his view of the law. The probate court sustained The Trust Company's objections to the letters.

On appeal, Thuss contends the trial court erred in sustaining The Trust Company's objections to the letters. Thuss contends the letters are relevant for purposes of evaluating The Trust Company's claim of limitations. Thuss contends the letters are relevant to when the parties actually became adverse on the question of Denman's intent, and thus to when Thuss's cause of action accrued. Thuss further contends the letters he authored were not hearsay because they were not offered for the truth of the matter asserted nor were they conclusory given their purpose. Rather, the letters were offered only to demonstrate there was no controversy regarding Denman's intent until after this court's opinion in *Denman I*. Thuss contends the trial court erred in not considering them for this purpose.

### *Standard of Review*

We review a trial court's ruling that sustains or overrules an objection to summary judgment evidence for abuse of discretion. *Paciwest, Inc. v. Warner Alan Props, LLC*, 266

S.W.3d 559, 567 (Tex. App.—Fort Worth 2008, pet. denied); *Doncaster v. Hernaiz*, 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.) (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, i.e., arbitrary and unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Merely because a trial court may decide a discretionary matter differently than the appellate court does not demonstrate an abuse of discretion. *Id.* To obtain reversal for an erroneous exclusion or admission of evidence, the appellant must establish the error was harmful, that is, it was calculated to cause and probably did cause the rendition of an improper judgment. *Doncaster*, 161 S.W.3d at 601; TEX. R. APP. P. 44.1(a). Errors in admission or exclusion of evidence are generally not reversible unless the appellant can show the whole case turns on the complained of evidence. *Doncaster*, 161 S.W.3d at 601 (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *Atl. Mut. Ins. Co. v. Middleman*, 661 S.W.3d 182, 185 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.)).

## *Application*

To constitute competent summary judgment evidence, the evidence must be admissible. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (holding that "no difference obtains between the standards for evidence that would be admissible in a summary judgment proceeding and those applicable at a regular trial."). Before evidence is admissible, it must be relevant. *Dallas Ry. & Terminal Co. v. Oehler*, 156 Tex. 488, 490, 296 S.W.2d 757, 759 (1956); *Serv. Lloyds Ins. Co. v. Martin*, 855 S.W.2d 816, 822 (Tex. App.—Dallas 1993, no writ). Relevant evidence is evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence. TEX. R. EVID. 401; *Cunningham v. Hughes & Luce, L.L.P.*, 312 S.W.3d 62, 72 (Tex. App.—El Paso 2010, no pet.). The test for relevancy is satisfied only when there is some logical connection between the fact offered and the fact to be proven. *Rep. Waste Servs., Ltd. v. Martinez*, 335 S.W.3d 401, 406 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

A review of the letters shows they are logically connected to Thuss's contention that his claims did not accrue as alleged by The Trust Company, i.e., there was no dispute on intent relative to Thuss's declaratory judgment claims until after *Denman I. See id.* We therefore hold the letters are relevant to an evaluation of The Trust Company's limitations defense.

Further, we do not believe the letters constitute hearsay or are conclusory so as to preclude their use as summary judgment evidence. Hearsay is defined as an out-of-court statement offered into evidence to prove the truth of the matter asserted therein. TEX. R. EVID. 801(d). Thuss asserts the letters were not included as summary judgment evidence to prove the truth stated in the letters, but to provide some evidence as to when a controversy arose between the parties on the issue of intent, which is relevant to The Trust Company's limitations defense. We agree. If used for the limited purpose of demonstrating the parties' positions on intent at the time of the letters, the letters are neither hearsay nor conclusory. Accordingly, we hold the probate court erred in sustaining The Trust Company's objections to these letters. We will consider the letters to the extent they provide evidence on the date Thuss's cause of action accrued.

### *Summary Judgment*

#### *Standard of Review*

Both parties filed traditional motions for summary judgment. We review de novo a trial court's ruling on a motion for summary judgment. *Traveler's Ins. Co. v. Joachim*, 315 S.W.3d

860, 862 (Tex. 2010); *Hausser v. Cuellar*, 345 S.W.3d 462, 463 (Tex. App.—San Antonio 2011, pet. denied) (en banc) (citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When both parties file motions for summary judgment, as they did here, and the trial court grants one motion and denies the other, we review all issues presented and render the judgment the trial court should have rendered. *Embrey v. Royal Ins. Co. of Am.*, 22 S.W.3d 414, 415-16 (Tex. 2000); *Hausser*, 345 S.W.3d at 463. When the movant asserts multiple grounds for summary judgment, as The Trust Company did, and the trial court grants summary judgment without specifying the grounds for its ruling, we must affirm the summary judgment if any of the grounds are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989); *Chrismon v. Brown*, 246 S.W.3d 102, 106 (Tex. App.—Houston [14th Dist.] 2007, no pet.). In conducting our review, we must consider the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in the nonmovant's favor, and determine whether the movant proved there were no genuine issues of material fact and it was entitled to judgment as a matter of law. *Id.*

### *Application*

As noted above, after our opinion issued in *Denman I*, Thuss requested reimbursement or a "grossing up" from The Trust Company for any taxes charged to the Ranch. When The Trust Company refused, Thuss filed a petition for declaratory judgment. In that petition, Thuss sought a declaration regarding the quality and quantity of property he was due under Denman's will. Thuss claimed these issues were never litigated, and that as of the filing of the petition, the only question determined thus far had to do with "what class of estate assets should be charged with the generation skipping transfer tax." Thuss asserted neither that question nor its answer was sufficient to determine whether he, as a devisee under Denman's will, was entitled to

reimbursement for any taxes charged to his devise based on Denman's intent that he receive the full amount of his devise. Accordingly, Thuss asked the probate court to declare he was entitled to the full value of the devise by Denman, meaning he was entitled to reimbursement or a "grossing up" from the residue of the estate for any GST tax charged to the Ranch. He asserted his claim arose under state law based on the testator's intent, and therefore the court's primary objective was to give effect to Denman's intent if legally permissible. Thuss claimed there was no state or federal law precluding his request, including section 2603(b) of the Internal Revenue Code because that provision merely requires a tax to be charged to a devise. Thuss argued that to give effect to Denman's intent, it would be necessary for him to receive a reimbursement or "grossing up" equal to the amount of the GST tax charged to the Ranch, and that to effect this, an amount equal to the tax should be added to the total value of the Ranch. In sum, Thuss asked the court to declare:

- Denman's intent, as expressed in the will, was that no devise be reduced by the imposition of any tax;

- Thuss is entitled to reimbursement from the residue of the estate for the GST tax charged to the Ranch;

- The executors are required to amend the tax returns to reflect any changes in tax liability from the reimbursement; and

- Thuss is entitled to reasonable attorney's fees and costs.

The Trust Company responded by filing a general denial, alleging the affirmative defenses of limitations, collateral estoppel, and res judicata, and asserting a counterclaim for attorney's fees. Thereafter, The Trust Company filed a motion for summary judgment, asserting Thuss's claims for declaratory relief were barred by: (1) the four-year statute of limitations; (2) the doctrine of res judicata; and (3) the doctrine of collateral estoppel.

Thuss filed a competing motion for summary judgment in which he asserted that a proper construction of Denman's will establishes, as a matter of law, that he is entitled to reimbursement for the GST tax charged to the Ranch because Denman's clear intent in Article XII of the will was that any tax charged to any devise was to be paid out of the residuary, and in Texas, the law requires the intent of the testator be ascertained and given effect. Thuss contends in the motion that our opinion in *Denman I* does not bar his reimbursement claim because the only question decided in *Denman I* was whether Article XII specifically referred to the GST tax so as to preclude such tax from being charged to the Ranch, which this court held it did not. According to Thuss, in *Denman I*, this court was not asked to decide, nor did it decide, whether Denman intended something else, holding "Section 2603(b) controls despite the testator's intent." *Denman*, 270 S.W.3d at 646. Thuss points out that in conjunction with this holding, this court added a footnote specifically noting that whether Thuss had a viable state law claim for reimbursement was not before the court. *Id.* at 646 n.3. Thuss argues that although a testator's intent is irrelevant under federal law for purposes of determining whether the GST tax is charged to devised property, it is not irrelevant under Texas law with regard to a claim for reimbursement. Thuss points out that in the will, he was devised the entirety of the Ranch and in Article XII of the will, Denman specifically stated that any taxes payable by reason of his death, other than property passing pursuant to powers of appointment, "shall be paid out of my residuary estate." Thuss therefore contends, as a matter of law, there is no doubt Denman intended Thuss to take the full value of the Ranch free from the payment of taxes. Therefore, Thuss claims he is entitled to a reimbursement or "grossing up" from the residuary for the GST tax charged to the Ranch. As a result, the executors must reduce the residue by the amount due for the GST tax, and transfer this amount, along with the Ranch, to Thuss.

After considering the parties' summary judgment motions, responses, and evidence on Thuss's request for declaratory judgment, the probate court granted The Trust Company's motion for summary judgment and denied the motion for summary judgment filed by Thuss. The court ordered that Thuss take nothing from The Trust Company on his claims for declaratory relief. The court also ruled on various requests for attorney's fees, including some requests that were pre-*Denman I*.

### *Statute of Limitations*

Thuss contends the trial court erred in granting summary judgment based on the statute of limitations. In its motion, The Trust Company asserted Thuss's claim for reimbursement was barred by the four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008) (providing that "[e]very action for which there is no express limitations period, except for an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."); *see also In re Estate of Florence*, 307 S.W.3d 887, 890 (Tex. App.—Fort Worth 2010, no pet.) (holding that four-year statute of limitations applies to declaratory judgment action to construe a will).[1] We agree the four-year limitations period applies. Because a declaratory judgment action is a procedural device used to determine substantive rights, to determine the applicable limitations period, we must look to the legal remedy underlying the cause of action. *Nw. Austin Mun. Tex. Util. Code Ann. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex. App.—Austin 2008, pet. denied). Here, Thuss sought to construe Denman's will. There is no statutory limitations period in the Texas Probate Code for bringing a will construction action. In the absence of a statutory limitations periods for the specific claim asserted, the residual four-year limitations period in section 16.051 of the Civil

---

[1] No one disputes that the four-year limitations period in section 16.051 of the Civil Practice & Remedies Code is the applicable limitations period.

Practice & Remedies Code applies. *See Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex. 1990); *Cantu v. Sapenter*, 937 S.W.2d 550, 552 (Tex. App.—San Antonio 1996, no writ).

A defendant moving for summary judgment based on the affirmative defense of limitations must conclusively prove the elements of the defense. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). Thus, a defendant moving for summary judgment based on limitations must prove as a matter of law: (1) the date on which the limitations period commenced, i.e., when the cause of action accrued, and (2) that the plaintiff filed its petition outside the applicable limitations period. *See Villarreal v. Wells Fargo Brokerage Servs., LLC*, 315 S.W.3d 109, 117 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Pustejovsky v. Rapid-American Corp.*, 35 S.W.3d 643, 646 (Tex. 2000)); *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. App.—Fort Worth 2005, pet. denied) (citing *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)).

The determination of the date on which a cause of action accrued is a question of law for the court. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 274-75 (Tex. 2004) (citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003); *Holy Cross Church of God in Christ v. Wolff*, 44 S.W.3d 562, 567 (Tex. 2001)). Generally, a cause of action accrues and limitations begin to run when facts come into existence that authorize a party to seek a judicial remedy. *Id.* In most cases, this occurs when a legal injury results from a wrongful act. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006); *Pirtle*, 177 S.W.3d at 571 (citing *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998)). However, a cause of action under the Declaratory Judgment Act does not accrue until there is an actual controversy between the parties. *See Murphy v. Honeycutt*, 199 S.W.2d 298, 299 (Tex. Civ. App.—Texarkana 1946, writ ref'd) (holding declaratory judgment action brought for purpose of will construction did not

accrue until actual controversy arose between parties); *see also*, *e.g.*, *Dessommes v. Dessommes*, 461 S.W.2d 525, 527 (Tex. Civ. App.—Waco 1970, no writ); *Transp. League, Inc. v. Morgan Express, Inc.*, 436 S.W.2d 378, 387 (Tex. Civ. App.—Dallas 1969, writ ref'd n.r.e.); *Outlaw v. Bowden*, 285 S.W.2d 280, 284 (Tex. Civ. App.—Amarillo 1955, writ ref'd n.r.e.). Accordingly, The Trust Company had to prove as a matter of law when an actual controversy on the issues raised in Thuss's petition for declaratory judgment arose and prove Thuss's petition was filed more than four years after the controversy arose.

In our view the statute of limitations dispute centers around what controversy we consider for purposes of limitations. The Trust Company asserted in its motion for summary judgment and argues on appeal that the "actual controversy" for purposes of limitations was whether the GST tax due on the transfer of the Ranch should be paid out of the residue or charged to the Ranch, i.e., who was responsible or liable for payment of the GST tax. The Trust Company contends that as early as February 2, 2005, all parties were aware there was a dispute as to whether the GST tax could be paid out of the residuary. The Trust Company points to a December 2004 legal memorandum written by attorney Harry W. Wolff, Jr. to the executors of Denman's estate. In the letter, Wolff opined the GST tax could not be paid out of the residuary, but had to be charged to the Ranch because although Article XII of Denman's will expressed an intention that all taxes be paid out of the residuary, the article did not contain a sufficiently specific reference to the GST tax, which precluded it being charged to the Ranch. A February 2, 2005 letter from Thuss's attorney to Thuss, submitted as summary judgment evidence by The Trust Company, shows Thuss's attorney, Peter M. Wolverton, had read Wolff's memorandum and advised Thuss he disagreed with Wolff's assessment, opining Article XII did contain a sufficiently specific reference to the GST tax so as to require it be paid from the residuary. In his

letter to Thuss, Wolverton stated that in his opinion, "a liberal reading of the tax payment clause of Mr. Denman's will; coupled with Mr. Denman's intent, as conceded in Mr. Wolff's memorandum would result in a Texas court directing that the generation-skipping transfer taxes be paid from Mr. Denman's residuary estate."

Based on these documents, The Trust Company argues there was an actual controversy between the parties, defining that controversy generally as "who had to pay the GST tax," at least by February 2, 2005, which was more than four years before Thuss filed his declaratory judgment action seeking reimbursement on April 6, 2009. As The Trust Company states, the "source from which the GST tax will be paid . . . has always been the dispute between Thuss and [The Trust Company]."

The Trust Company further notes that in *Denman I*, Thuss repeatedly disputed The Trust Company's position by placing Denman's intent at issue, arguing Denman's intent as expressed in the will required the residuary to pay the GST tax. That this court decided intent was irrelevant in *Denman I* does not mean it was not at issue and in controversy between the parties– it clearly was. Moreover, The Trust Company points to the third footnote in *Denman I*, explaining the footnote merely recognized that if Thuss had a claim for reimbursement under state law, making intent relevant, no such claim had been made or was at issue before the court. The Trust Company asserts the footnote in no way suggested Thuss had a right to reimbursement, which is the interpretation Thuss seems to place on the footnote.

Thuss, on the other hand, contends there was no actual controversy between the parties until at least August 27, 2008, when this court's opinion and judgment in *Denman I* issued. Thuss argues The Trust Company "blurs the issues in *Denman I* with the issues in the instant suit," confusing the accrual of the current claim for reimbursement with the accrual of the earlier

litigated issue of how to charge the GST tax under federal law. In support of his argument, Thuss points to the fact that in the earlier litigation, The Trust Company never suggested Denman intended the GST tax to be charged to the Ranch; rather, it argued that despite Denman's intent, the GST tax had to be charged to the Ranch under federal law. Thuss points out that The Trust Company "steadfastly maintained" that Denman's intent was irrelevant to the issue of whether section 2603(b) required the GST tax to be charged to the Ranch. In fact, The Trust Company's original declaratory judgment action in *Denman I* specifically sought a judicial determination on how to charge the GST tax. According to Thuss, The Trust Company never disputed Denman's intent until he sought reimbursement by way of letters to The Trust Company in 2008, after the judgment in *Denman I*. And, given there was no dispute about intent until 2008, and the petition regarding reimbursement under state law based on intent was filed in 2009, limitations did not bar Thuss's suit. In other words, Thuss claims that only when The Trust Company refused Thuss's request for reimbursement by letter dated March 31, 2009, did an actual controversy exist as to whether Thuss was entitled to reimbursement, or an increase in his devise, due to the allocation of the GST tax. Thuss asserts this court held as much when in footnote three of *Denman I* we stated the issue of reimbursement under state law was not before the court.

This leads to another argument by Thuss with regard to The Trust Company's claim of limitations. Thuss argues that because there has yet to be a distribution of the estate, including the Ranch, no limitations period has begun to run. More specifically, Thuss argues that because in his petition he asked the probate court to declare he was entitled to a larger distribution in order to offset the GST tax, he raised issues of distribution, and such issues are not subject to a limitations defense in the absence of complete distribution or a closure of the estate. In support

of this position, Thuss cites *Estate of McGarr*, 10 S.W.3d 373 (Tex. App.—Corpus Christi 1999, pet. denied). In that case, the court held that for purposes of an accounting action against an estate executor, limitations did not begin to run until the estate closed, i.e., when all debts were paid and all property was distributed. *Id.* at 376. Thuss contends that because there had been no distribution or final accounting, and The Trust Company still owes him a fiduciary duty, limitations have not yet begun to run as to his claim that The Trust Company comply with its fiduciary duty and distribute the property in accordance with the testator's intent.

The Trust Company responds to this argument by pointing out that *McGarr* was an accounting case, which Thuss's claim is not. Rather, Thuss's claim is for a proper construction of the will, a claim that was available to him before any distributions and that arose when The Trust Company first disputed his claim that the GST should be paid out of the residuary. Moreover, The Trust Company argues Thuss's contention is nonsensical given that there can be no distribution of the Ranch until it is determined who pays the GST tax. Only after such a determination is made can The Trust Company, per its fiduciary duty, make proper distributions to Thuss and the residuary beneficiaries, Trinity University and the San Antonio Museum of Art.

Based on the parties' argument, we must determine when the controversy between The Trust Company and Thuss arose, which will determine the date limitations began to run. To make this determination, the court must decide how to define "the controversy." Is it broad, as The Trust Company asserts, who had to pay the GST tax, which encompasses any right to reimbursement Thuss might have? If this is correct, limitations bars Thuss's claim as the issue of responsibility for the GST tax was in controversy at least by February 2, 2005, more than four years before Thuss filed his petition for declaratory relief. Or, is it more restricted, as Thuss asserts, with the only controversy before *Denman I* being what property should be charged with

the GST tax, which is separate from the current controversy of Thuss's right to reimbursement based on Denman's intent? If Thuss is correct, limitations would not bar his claims for declaratory relief because the earliest date of controversy would be the date of the judgment in *Denman I*, August 27, 2008.

We hold Thuss's interpretation of "the controversy" is far too limited and restrictive. It cannot reasonably be said that the original declaratory judgment action did not encompass a potential claim for reimbursement or "grossing up" when the pivotal issue before the court was who has to pay or is liable for the GST tax, Thuss or the residuary. Moreover, it appears Thuss agreed with this interpretation in 2006, asking in his Second Amended Counterclaim in the original declaratory judgment action, that the court declare that "the 'transfer taxes' on the gift under the Will to [Thuss] be paid from the residuary estate and not by [Thuss] or the property devised under the Will to [Thuss]." This pleading strongly suggests Thuss knew the controversy was more global than he now contends, that it was in fact about who was to pay the GST tax, and that this was and always has been the actual controversy between the parties. We hold "reimbursement" or "grossing up" was an issue subsumed within the actual controversy, an issue Thuss could have asserted in *Denman I*, particularly given that he continuously and emphatically asserted he was not required to pay the GST tax because Denman did not intend that he should.

We also hold there is no merit to Thuss's argument that limitations has not begun to run given the failure of The Trust Company to distribute the devises, particularly the Ranch. Rather, we hold The Trust Company is correct that *McGarr* is inapplicable, and Thuss's current claim was available as early as February 2005 when the dispute over the GST tax became apparent.

Accordingly, we hold The Trust Company proved as a matter of law that an actual controversy existed between the parties regarding who was liable for payment of the GST tax at

least by February 2, 2005, and that Thuss did not file the current action until more than four years after that date. The controversy that existed between The Trust Company and Thuss in February 2005 included Thuss's claim for a reimbursement or "grossing up" because it was subsumed within the issue of who was liable or responsible for the GST tax. We therefore overrule Thuss's issue challenging the trial court's granting of summary judgment based on limitations. Given our holding that limitations barred Thuss's claims, we need not consider the remaining summary judgment grounds. *See Carr*, 776 S.W.2d at 570; *Chrismon*, 246 S.W.3d 106.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order granting the motion for summary judgment filed by The Trust Company and denying the motion for summary judgment filed by Thuss.

Marialyn Barnard, Justice