# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00347-CV

---

**Madeleine Connor, Appellant**

**v.**

**Lost Creek Neighborhood Association, Appellee**

---

**FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-17-005950, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Madeleine Connor appeals the trial court's order granting Lost Creek Neighborhood Association's motion for summary judgment. We will affirm.

### BACKGROUND

Lost Creek Neighborhood Association (LCNA) is a voluntary, non-profit association of all owners and residents of the Lost Creek neighborhood in Austin. LCNA's bylaws provide that those owners and residents who pay annual dues of $60 are "current members" entitled to vote in LCNA elections, attend LCNA functions, and attend an annual picnic. Connor resides in the Lost Creek neighborhood and has, in the past, served as LCNA's newsletter editor and as an LCNA board member.

From approximately 1983 until early 2009, LCNA had an agreement with the cable television companies providing service in Lost Creek that the service provider would remit

to LCNA a fixed percentage of cable television fees collected from customers in Lost Creek. The funds LCNA received from the cable television service providers were used to fund LCNA activities. After a Lost Creek resident complained about the cable service providers' collection of fees from Lost Creek residents for remittance to LCNA, the practice was discontinued. The cable service provider's last remittance to LCNA occurred in February 2009.

In May 2017, Connor sued LCNA seeking declaratory and injunctive relief related to LCNA's previous practice of receiving a percentage of the cable television fees collected from Lost Creek customers. Connor's live pleading, her fourth amended petition, sought declarations that (1) LCNA's practice of accepting or otherwise receiving cable fees from Lost Creek residents was illegal and fraudulent, (2) LCNA used the money collected for illegal purposes, (3) the LCNA bylaw requiring payment of $60 per year to become a "current member" entitled to vote constitutes an illegal "poll tax," and (4) the LCNA bylaw that requires an additional fee to attend an annual fall picnic and receive a directory of LCNA residents is illegal. Connor sought the following injunctive relief: that LCNA (1) be required to issue a formal apology to the residents of Lost Creek for the actions Connor complains of, (2) amend its bylaws to remove the requirement that residents pay an annual fee to be entitled to vote, (3) refund to Connor the cable fees it received related to her cable television service, and (4) notify Lost Creek residents of their right to request a similar refund.

LCNA filed a motion for summary judgment asserting principally that Connor's claims were barred by the statute of limitations. LCNA also asserted that, as a matter of law, the requirement that residents pay an annual fee to be entitled to vote did not constitute an illegal poll tax. Connor filed a response to the motion for summary judgment in which she raised three arguments. Connor asserted that LCNA's collection of fees was illegal, that the requirement that

2

residents pay a fee to vote for LCNA officers constitutes an illegal poll tax, and that "summary judgment standards require the Court to deny the motion." After a hearing, the trial court granted LCNA's motion for summary judgment without stating the grounds.

In three issues on appeal, Connor argues that summary judgment was improper because (1) her requests for declaratory relief were not time barred, and (2) the imposition of annual fees to vote for LCNA officers is illegal and, relatedly, that requiring Lost Creek residents to pay an annual fee to be eligible to vote on "a variety of political, social, and civil matters affecting them" is unlawful.

## DISCUSSION

We review the granting of a motion for summary judgment de novo.[1] *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). When the trial court does not specify the grounds for its ruling, summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013).

A defendant who moves for summary judgment on the affirmative defense of limitations has the burden to: (1) conclusively prove when the cause of action accrued and (2) negate the discovery rule, if it has been asserted and applies. *See Via Net v. TIG Ins.*, 211 S.W.3d 310, 313 (Tex. 2006); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990). If the defendant conclusively

---

[1] The standards for reviewing a summary judgment are well established and undisputed. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a(c).

establishes that the statute of limitations bars the action, the burden shifts to the plaintiff to produce evidence raising a fact issue in avoidance of the statute of limitations. *Rubio*, 185 S.W.3d at 846. Connor neither pleaded nor asserted that the discovery rule is applicable nor did she assert or adduce evidence that would support tolling limitations based on fraudulent concealment; therefore, our analysis focuses on when Connor's claims accrued.

A cause of action accrues and the limitations period begins to run when facts come into existence that authorize a claimant to seek a judicial remedy. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011). Thus, generally a cause of action accrues when a wrongful act causes a legal injury, regardless of when the party learns of the injury and regardless of whether all resulting damages have occurred. *See, e.g.*, *Via Net*, 211 S.W.3d at 313; *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). However, a cause of action under the Uniform Declaratory Judgments Act accrues when there exists an actual controversy between the parties. *See In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, no pet.). When a cause of action accrues is typically a question of law. *Exxon Corp.*, 348 S.W.3d at 202.

In her first issue, Connor asserts that the trial court improperly concluded that her claims for declaratory and injunctive relief regarding the cable fees were barred by limitations. These claims arise out of LCNA's receipt of fees from cable companies, an event that last occurred in 2009. Connor sued LCNA in March 2017, more than eight years after LCNA last received the fees Connor complains of. Thus, Connor's claims for declaratory and injunctive relief arising out of the cable fee payment agreement between LCNA and the cable service providers are barred by any applicable statute of limitations. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 16.051 (residual four-year limitations provision).

4

On appeal, Connor cites *Murphy v. Honeycutt*, 199 S.W.2d 298, 299 (Tex. App.—Texarkana 1946, writ ref'd), for the proposition that "undisclosed conflicting claims between persons bearing jural relations do not constitute a controversy which would set in operation the statute of limitations against the action for declaratory relief." *Murphy*, 199 S.W.2d at 299. The controversy giving rise to Connor's claims arose as early as 1983 and last occurred no later than 2009. Connor did not assert the discovery rule or otherwise argue or submit evidence to the trial court tending to show that the LCNA's receipt of cable fees was "undisclosed." In fact, uncontroverted summary judgment evidence submitted by LCNA establishes that a fee, identified as "HOA Fee," appeared on Lost Creek cable customers' cable bills. We also reject Connor's assertion that an actual controversy between her and LCNA did not occur until she filed suit. Nor do we agree with her unsupported assertion that the statute of limitations was tolled so long as LCNA continued to be in possession of funds generated from the cable service provider agreement.[2] The controversy giving rise to Connor's claim is the allegedly "illegal" receipt of funds from cable service providers, a practice that ended in 2009. Connor's claims arising from that practice, which were not asserted until 2017, are barred by limitations. We overrule Connor's first issue.

In her second issue, Connor argues that the trial court erred in granting summary judgment on her challenge to the requirement that Lost Creek residents pay an annual fee to be eligible to vote for LCNA officers. Connor argues, as she did in the trial court, that this

---

[2] Moreover, Connor provided no summary-judgment evidence that would create a fact issue as to whether LCNA continued to be in possession of such funds. The evidence she relies on in her brief on appeal consists only of deposition testimony that LCNA did not create a separate account for funds received from the cable service providers and that at some unidentified point in time there was a "treasury surplus" that would have included funds generated from the cable fees. This evidence does not raise a fact issue regarding whether LCNA is still in possession of such funds.

requirement imposes an illegal "poll tax" on Lost Creek residents. Connor further maintains that, because this requirement is still in place, her claims arising out of that practice are not barred by limitations. We conclude that the trial court properly granted summary judgment because, as a matter of law, the LCNA's annual fee does not constitute an illegal poll tax.

The Twenty-Fourth Amendment to the United States Constitution invalidated the poll tax as a condition of voting in federal elections. *See* U.S. Const. amend. XXIV, § 1. In 1966, a federal district court in Texas invalidated the Texas poll tax, which required that, in order to vote in general, special, or primary election of the cities, counties, and the State, a person between the ages of 21 and 60 had to hold a poll tax receipt. *See United States v. Texas*, 252 F. Supp. 234, 238, 255 (W.D. Tex. 1966), *aff'd* 384 U.S. 155 (1966). The court held that "[e]ven if the poll tax were seriously enforced as a revenue measure, the tying of its collection to the franchise would be invalid as a charge on a very precious constitutional right." *Id.* "A state may not impose a charge for the enjoyment of a right granted by the federal constitution." *Id.* Thus, poll taxes are illegal because they interfere with the right to vote in city, county, state, or federal elections, a right granted by the United States Constitution. *See Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.").

It is self-evident that the requirement that Lost Creek residents pay an annual fee to become voting members of their neighborhood association does not constitute an illegal poll tax. LCNA is a non-profit association of owners and residents of Lost Creek. The right to vote in city, county, state, or federal elections is not implicated in selecting LCNA officers. There is no allegation that the LCNA membership fee must be paid as a condition for voting in any federal, state, county, or city election. Because the LCNA membership fee is not related to the

6

exercise of the fundamental right to vote in such elections, it is not an illegal "poll tax." We overrule Connor's second appellate issue.

In her third issue, Connor asserts that requiring Lost Creek residents to pay a fee in order to vote on "political, social, and civil matters affecting them" is contrary to the United States Supreme Court's holding in *Janus v. AFSCME Council*, 138 S. Ct. 2448 (2018), because it compels them to subsidize the speech of other private speakers and, consequently, raises First Amendment concerns. Connor did not raise this argument in her response to LCNA's motion for summary judgment. "We will not reverse a summary judgment based on an argument that was not expressly presented to the trial court by written response or other document." *TruStar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 321 (Tex. App.—Dallas 2010, no pet.); *see also* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). We overrule Connor's third issue.

## CONCLUSION

Having overruled Connor's three appellate issues, we affirm the trial court's order granting LCNA's motion for summary judgment.

_____
Chari L. Kelly, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed: March 13, 2020

7