

|  | § |  |
| --- | --- | --- |
| JOE FRANK MUZQUIZ/PARA TODOS, INC., | § | No. 08-19-00005-CV |
|  | § | Appeal from the |
| Appellant/Cross-Appellant, | § |  |
|  | § | 17th District Court |
| v. | § |  |
|  | § | of Tarrant County, Texas |
| PARA TODOS, INC./JOE FRANK MUZQUIZ, | § |  |
|  | § | (TC#017-287752-16) |
| Appellee/Cross-Appellee. | § |  |
|  | § |  |

## DISSENTING OPINION

This case represents something of a landlord's worst nightmare. In June 2003, Leticia Grimaldo leased a portion of a commercial building she owned in Fort Worth to Para Todos, Inc., which operates a restaurant on the leasehold. The written lease agreement set the rent at $27,000 per year to be paid in $2,250 monthly installments. As lessor, Ms. Grimaldo was responsible under the lease for repairs and maintenance on all external walls, the roof, and the parking lot. She was also responsible for paying the property taxes, securing insurance for fire damage, and keeping the roof and parking area in good repair. Para Todos has operated a restaurant on the premises ever since. Ms. Grimaldo passed away in 2014 and the property was inherited by her son, and our Appellant, Joe Frank Muzquiz.

What may have looked like an acceptable deal in 2003, has become a bad one. While the rent is fixed, the costs for insurance, repairs, and taxes are not. Muzquiz testified that by 2017, the tax and insurance burden attributable to the leased premises is approximately $26,000, or just

1

$1,000 below the annual rental rate. At one time, Muzquiz listed the property for sale, but he apparently never received any offers because buyers would be subject to the lease. And because the term of the lease is perpetual, and the rent has no escalation clause, Muzquiz may be relegated to a property that could cost him more to maintain than it generates in revenue.

In response to this state of affairs, Muzquiz's lawyer on October 26, 2015 sent a demand letter to Para Todos claiming the lease was "invalid and void" in violation of the "Rule against Perpetuities" and he asked to renegotiate the lease. When Para Todos refused, Muzquiz filed a declaratory judgment lawsuit, that for several reasons, all ably expounded on by the majority, sought to declare the lease unenforceable, or alternatively, that it is terminable at will by either party.

Para Todos principally urges that the parties unequivocally agreed to a perpetual lease term, and that the lease should be enforced as written. Para Todos also asserted a statute of limitations defense which focuses on three dates. The parties signed the lease on June 1, 2003. In 2010, Muzquiz and his mother discussed how they might raise the rent, and on his mother's suggestion, he consulted with a lawyer to review the lease. That lawyer wrote to Muzquiz on December 28, 2010 to say "I am still doing research on the question of whether the lease with the Original restaurant can be enforced or not. I will let you know as soon as I come to a conclusion." The lawyer's office, however, apparently closed and Muzquiz never got an answer from him. Around that same time, Muzquiz's mother got very sick and she never pursued the matter further. The third important date is the date of suit, September 27, 2016. Under Para Todos's argument, applying a four-year statute of limitations would bar the suit if either the June 1, 2003 or December 28, 2010 dates define the accrual for the cause of action.

Muzquiz responded that the accrual date for the statute of limitations must be defined by when the parties had some actual controversy over the lease, which here was not until Para Todos learned of and disputed Muzquiz's claimed right to terminate (and then renegotiate) the lease. And Muzquiz argued that event could not have occurred before the date of his demand letter on October 26, 2015, which sought to renegotiate the lease.

Following a bench trial, the trial court determined that Muzquiz's claim for declaratory relief was not barred by limitations, but otherwise declined to grant Muzquiz any relief. On appeal, Para Todos raises by cross-point a claim that the trial court erred in declining to dismiss the suit on statute of limitations grounds. I would grant that cross-point and affirm the judgment below. I express no opinion on the merits of the suit.

## I. STATUTE OF LIMITATIONS

### A. Controlling Law

The Declaratory Judgments Act has no separate statute of limitations, but instead requires the parties to look to the nature of underlying dispute. TEX.CIV.PRAC.& REM.CODE ANN. § 37.001 *et seq.*; *Ammerman v. Ranches of Clear Creek Community Assn., Inc.*, 562 S.W.3d 622, 636 (Tex.App.--Houston [1st Dist.] 2018, no pet.) ("Because a declaratory judgment action is a procedural device used to determine substantive rights, we must look to the legal remedy underlying the cause of action to determine the applicable limitations period."); *HSM WynnGate 04, Ltd v. Texas Sotherby Homes, Inc.*, No. 02-15-00281-CV, 2016 WL 4540492, at *3 (Tex.App.--Fort Worth Aug. 31, 2016, pet. denied) (mem. op., not designated for publication) (same). While the parties disagree on the underlying nature of this dispute, both agree that the residual four-year statute of limitations governs the claims asserted here. *See* TEX.CIV.PRAC.& REM.CODE ANN.

§ 16.051 ("Every action for which there is no express limitations period . . . must be brought not later than four years after the day the cause of action accrues.").

The statute of limitations is an affirmative defense for which Para Todos carries the initial burden to plead, prove, and secure favorable findings to support. TEX.R.CIV.P. 94; *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). Here, Para Todos needed to prove as a matter of law: (1) the date on which the limitations period commenced, and (2) that Muzquiz filed his petition outside the applicable limitations period. *In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex.App.--San Antonio 2011, no pet.). The statute of limitations begins to run when a cause of action accrues. *Agar Corp., Inc. v. Electro Circuits Int'l., LLC*, 580 S.W.3d 136, 144 (Tex. 2019). The determination of the date on which a cause of action accrues is a question of law for the court. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 274-75 (Tex. 2004); *see also Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015) ("[W]hen the [L]egislature employs the term 'accrues' without an accompanying definition, the courts must determine when that cause of action accrues and thus when the statute of limitations commences to run") *quoting Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). And it is the accrual date that is at the heart of this dispute.

Generally, a cause of action accrues when facts come into existence that authorize a party to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). The Texas Supreme Court has also stated: "[A] cause of action accrues 'when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" *Archer v. Tregellas*, 566 S.W.3d 281, 288 (Tex. 2018), *quoting S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). A cause of action for a breach of contract claim, for instance, accrues at the moment the contract is breached. *Cosgrove v. Cade*, 468 S.W.3d 32,

4

39 (Tex. 2015); *see also Archer*, 566 S.W.3d at 288 ("a right of first refusal is breached when property is conveyed to a third party without notice to the rightholder.")

While those rules are straightforward enough, another line of cases holds that a cause of action under the declaratory relief act does not accrue until there is an actual controversy between the parties. *In re Estate of Denman*, 362 S.W.3d at 144; *Murphy v. Honeycutt*, 199 S.W.2d 298, 299 (Tex.App.--Texarkana 1946, writ ref'd) ("The statute of limitations in a declaratory action does not begin to run against the right to maintain the same, until an actual controversy has accrued or occurred, and undisclosed conflicting claims between persons bearing jural relations do not constitute a controversy which would set in operation the statute of limitations against the action for declaratory relief.") (cleaned up); *see also, e.g.*, *Dessommes v. Dessommes*, 461 S.W.2d 525, 527 (Tex.App.--Waco 1970, no writ).

### B. Standard of Review

Appellate courts review declaratory judgments under the same standards as other judgments and decrees. TEX.CIV.PRAC.& REM.CODE ANN. § 37.010; *Roberts v. Wilson*, 394 S.W.3d 45, 49 (Tex.App.--El Paso 2012, no pet.). As such, the trial court's findings of fact "have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Those findings of fact may be reviewed for legal and factual sufficiency under the same standards that are applied in reviewing evidence to support a jury's answer. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We review its conclusions of law, however, de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 258 (Tex.App.--Fort Worth 2018, no pet.). And we "independently evaluate conclusions of law to determine

5

whether the trial court correctly drew the legal conclusions from the facts." *Walterscheid*, 557 S.W. 3d at 258.

### C. Application

*1. Path One: a contract reformation claim accrues when the contract is signed.*

As with many things in the law, the path taken determines where you eventually arrive. Para Todos sends us down a trail defined by situations where parties seek to reform a deed. Under that line of cases, limitations accrue when the parties sign the original agreement to be reformed. The parties are deemed to know the terms of the agreement that they signed, and consequently should know of the need to reform the agreement as of the date of signing.

In *Cosgrove v. Cade*, for instance, the plaintiff agreed to sell a piece of property but expressly reserved their mineral rights. 468 S.W.3d at 35. The deed, however, transferred the property in fee simple, which included the mineral interests. One provision from the title packet obligated the buyers to execute a correction deed to conform the deed to the terms of the sales agreement. *Id.* The conveyance of the mineral interests came to light more than four years later, and the seller demanded a correction deed, which the buyer refused to execute. *Id.* The trial court dismissed the suit on limitations and the Fort Worth Court of Appeals reversed that decision. The limitations issue landed squarely before the Texas Supreme Court.

The supreme court rendered judgment for the buyer on limitations. It first noted that the unambiguous terms of the deed would have put the seller on notice of what they were conveying at the time they signed that document. *Id.* at 37 ("At execution, the grantor is charged with immediate knowledge of an unambiguous deed's material terms."); *see also Wee Tots Pediatrics, P.A. v. Morohunfola*, 268 S.W.3d 784, 791 (Tex. App.--Fort Worth 2008, original proceeding) (person who signs a contract is held to knowledge of the legal effect of its terms). The *Cosgrove*

6

court "squarely adopted" a "bright line" rule that "[p]arties are charged as a matter of law with knowledge of an unambiguous deed's material omissions from the date of its execution, and the statute of limitations runs from that date." *Cosgrove*, 468 S.W.3d at 37, *citing Kahanek v. Kahanek*, 192 S.W.2d 174, 176 (Tex.App.--Galveston 1946, no writ) ("It is well settled . . . in suits to correct a mistake in a deed . . . if such actor be the grantor, then he is charged, as a matter of law, with knowledge of the contents of his deed from the date of its execution, and limitation begins to run against his action to correct it from that date."). Accordingly, the sellers were charged with notice "as a matter of law and upon execution of the deed" of the defect in the deed. *Cosgrove*, 468 S.W.3d at 40. "Allowing them to slumber on this knowledge, for years or decades or generations, before seeking a corrected deed is not a luxury we have recognized, and would render meaningless parties' recognized duty to exercise diligence in examining their mineral rights." *Id*.

Para Todos reasons that Ms. Grimaldo would have similarly known of the terms of the lease she signed in 2003, including that it had no rent escalation clause and saddled her with the obligation to pay fire insurance and property taxes. At the very least, she would have known of the consequence of the lease terms by December 2010 when she and her son engaged an attorney to find a way out of the lease.

> 2. *Path Two: when the parties disagree over the legal interpretation of a document*.

Muzquiz urges a different path. He argues that because a declaratory relief claim is meant to resolve live controversies over parties' rights, a declaratory relief claim cannot accrue until the parties actually disagree over their respective rights. And to be sure, several cases follow that same path. For instance, the court in *In re Estate of Florence*, 307 S.W.3d 887, 892 (Tex.App.--Fort Worth 2010, no pet.) held that a declaratory relief action to construe a will did not accrue on the date that the will was executed, or the date it was admitted to probate. Rather, the claim accrued

7

when a conflict in interpretation of the will language was much later articulated by one of the parties.

Many of the cases Muzquiz cites refer back to *Murphy v. Honeycutt*. In that case, several remaindermen sought a declaration that a deceased husband's will left property to his wife in a life estate, and not in fee simple. 199 S.W.2d at 299. The remaindermen did not file their suit until the wife attempted to sell real property to a third party. The court concluded the declaratory relief act claim was timely, because until she attempted to sell the property, there was no actual controversy about the terms of the will. *Id*.; s*ee also In re Estate of Denman,* 362 S.W.3d at 144 (in a declaratory judgment act claim construing a will, limitations did not accrue until an actual controversy arose between the parties over who was liable to pay gift taxes).

Applying these cases, Muzquiz reasons his claim did not accrue until he sent a letter in 2015 seeking to terminate and renegotiate the lease, which Para Todos refused to do. Only at that time was there an actual controversy over the terms of the lease.

### 3. *The path this court should take.*

This lawsuit hews closer to the facts of *Cosgrove* than the cases Muzquiz relies on. *Cosgrove* involved reformation of a deed. The suit here, of course, is not strictly a reformation claim. *See Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987) ("The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument, so that the instrument truly reflects the *original* agreement of the parties.") (emphasis original). The parties were not correcting a mutual mistake in the drafting of the lease. But the relief sought asked the trial court to either cancel the lease (because it is void) or add a term that was not a part of the original contract (a mutual right to terminate at will). And it sought this relief

8

based on lease terms that would have been obvious at the lease's inception. Likewise, in *Cosgrove*, one party sought to add a term that was obviously missing at the time the original deed was signed.

Moreover, in each of the cases that Muzquiz relies on, the controversy that triggered the need for a declaratory judgment arose from some specific event--apart from the action of the plaintiff--that triggered the dispute. In *Murphy v. Honeycutt*, for instance, the interpretation of the will was never an issue until the wife, who the plaintiffs believed held only a life estate in the property, attempted to sell the property as if she held it in fee simple. 199 S.W.2d at 299.[1] The same can be said for the Fort Worth court's decision of *In re Estate of Florence*. In that the case the wife treated the property she held from her deceased husband's estate as being in a life estate. 307 S.W.3d at 890. It was not until her death that one heir attempted to treat the property differently.[2] Stated otherwise, each of these cases can be justified under the general rule that a cause of action accrues when facts come into existence that authorize a party to seek a judicial remedy. *Archer*, 566 S.W.3d at 288-89. Not until there was some distinct event triggered by a third party could each of these plaintiffs could seek redress.

In this case, however, there was no specific event that triggered Muzquiz's decision to send a demand letter to renegotiate the lease, other than his own decision to do so. The only third-party actions that contributed to the economics of the lease were the incremental tax increases and insurance costs over the years. But the decision that these costs cut too close to the rental rate was

---

[1] The holding in that case could also be explained by the rule that the statutes of limitation as to a remainderman's interest in land, subject to a life estate in another, does not begin to run until the death of the life tenant. *See Estate of McWhorter v. Wooten*, 622 S.W.2d 844, 846 (Tex. 1981).

[2] Muzquiz also cites to *Dessommes*, 461 S.W.2d at 527. The case is similarly unavailing. There, a husband and wife were divorced in 1963, but the decree did not address the husband's pension. In 1968, the wife filed a motion in the divorce proceeding to correct the decree *nunc pro tunc*, claiming the pension division had been decided, but not included in the decree. The trial court entered an order specifically holding the issue had not been decided. The wife's declaratory judgment action was timely filed within two years of that order. Again, the act of a third party outside the exclusive control of the plaintiff dictated when the claim accrued.

still Muzquiz's. Viewing the accrual date for limitations as he does, would place in the hands of one contracting party the unilateral right to determine when limitations begins to run merely by asserting a declaratory judgment claim. Or in Muzquiz's case, he could accept the benefits of having a long-term tenant until he unilaterally decided it was time to invoke a dispute in the hopes of raising the rents.

A declaratory judgment action is merely a procedural tool that itself has no limitations provision. *Ammerman*, 562 S.W.3d at 636. And even in a declaratory judgement suit, the traditional rules of accrual can still apply. *Id*. at 638 (holding that limitations barred declaratory relief action over location of "building envelope" on residential lot which was known when plaintiffs bought their property in 2006, even though controversy over construction on it did not arise until 2016).

The statute of limitations can indeed lead to harsh results. To blunt some of those effects, courts allow litigants to interpose the "discovery rule" when the law so permits. The discovery rule is an exception to the general accrual rule that applies when the injury is by its nature inherently undiscoverable. *Childs v. Haussecker*, 974 S.W.2d 31, 36-37 (Tex. 1998). "Where the discovery rule applies, the cause of action accrues when a reasonably diligent and careful plaintiff knows or should have known of the wrongful act and injury." *Agar*, 580 S.W.3d at 146. In a conventional trial on the merits, the party asserting the discovery rule carries the burden to plead and prove its requisites. *Woods*, 769 S.W.2d at 517. The discovery rule was not asserted in this litigation. But even if it was, and had it been pled, the facts here show that by 2010 the original lessor knew that economic conditions were such that the rental payments were too low. Muzquiz testified as follows:

> Q. And you got involved in 2010 because your mother came to you and said, "Will you look at this lease?" Is that correct?

10

A. That is correct.

Q. And from that, you took that question to an attorney named Mr. Burkett; is that correct?

A. Well, she was concerned that she was not able to raise the rent, and my -- my thinking is that she probably went to [Para Todos's owner] to talk to him and that's how she found out, because she didn't know how to read that lease, period.

Q. So in 2010 she expressed that concern to you about the rent?

A. That is correct, and my mom and I, we decided that -- and on my mom's side, she wanted to see a lawyer, and I said, "Okay. We'll go ahead and hire a lawyer."

Q. And that happened in 2010?

A. Yes, sir.

That lawyer wrote to Muzquiz on December 28, 2010 to say "I am still doing research on the question of whether the lease with the Original restaurant can be enforced or not. I will let you know as soon as I come to a conclusion." That the lawyer never arrived at a legal theory is not determinative. Muzquiz's mother was aware of her predicament with the lease at that point. Between the two, they waited almost six years to then file suit.

I would sustain Para Todos's cross-appeal and conclude that the suit below was barred by the four-year statute of limitations.

JEFF ALLEY, Justice

March 31, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

11