**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NOs. 01-17-00015-CV &**

**01-17-00448-CV**

———————————

**CLAY AMMERMAN AND ERIN AMMERMAN, Appellants**

**V.**

**THE RANCHES OF CLEAR CREEK COMMUNITY ASSOCIATION, INC. AND THE RANCHES OD CLEAR CREEK ARCHITECTURAL REVIEW COMMITTEE, Appellees**

---

**On Appeal from the 506th District Court**
**Waller County, Texas**
**Trial Court Case Nos. 16-01-23529-A & 16-01-23529**

---

# O P I N I O N

Appellants, Clay and Erin Ammerman, sued appellees, the Ranches of Clear

Creek Community Association, Inc., the Ranches of Clear Creek Architectural

Review Committee (collectively, "the Association"), and Johnny and Angela Wilson, for breach of contract and other causes of action alleging that the Association and the Wilsons violated applicable restrictive covenants. The Wilsons then filed counter-claims against the Ammermans, asserting that the Ammermans also violated applicable deed restrictions. The trial court rendered summary judgment in favor of the Association and the Wilsons on all claims.[1] On appeal, the Ammermans argue: (1) the trial court erred in granting summary judgment dismissing the Ammermans' claims on statute of limitations grounds because the Ammermans presented some evidence raising a fact issue regarding when their cause of action for breach of the Covenants and a declaratory judgment against the Wilsons and the Association accrued and when they could have discovered their cause of action; and (2) the trial court erred in granting summary judgment dismissing their claims on the ground that the Association and the Wilsons had conclusively proved that they did not violate the relevant restrictive covenants because they presented some evidence that the Association acted arbitrarily and capriciously in approving the Wilsons' building plans; and (3) the trial court erred in granting summary judgment in favor of the Wilsons on their claim that the Ammermans breached the restrictive covenants in making changes

---

[1] The Ammermans' claims against the Wilsons were addressed in cause number 16-01-23529 and resulted in appellate cause number 01-17-00448-CV. The Ammermans' claims against the Association were severed into trial court cause number 16-01-23529-A and resulted in appellate cause number 01-17-00015-CV.

to the buildings on their own property because the alleged violations were barred by the statute of limitations.

We affirm the trial court's summary judgment dismissing the Ammermans' claims against both the Wilsons and the Association. We reverse the trial court's grant of summary judgment in favor of the Wilsons on their counterclaims against the Ammermans and remand for further proceedings consistent with this opinion.

## Background

The Ranches of Clear Creek (the Community) is a gated community in Waller County, Texas. The Declaration of Covenants and Restrictions for the Ranches of Clear Creek (the Covenants) that were filed with Waller County require, among other things, in Article VI, section 3, that all improvements or alterations to improvements must be approved in writing by the Architectural Review Committee (ARC) after the submission of certain required documentation. The Covenants further provide that all improvements to property must be made within the designated predetermined "Building Envelope," which is defined as "that certain contiguous and regularly shaped three (3) acre portion of each Lot to be designated by each Owner and approved by the Residential Review Committee prior to the commencement of any construction upon any Lot." Article VI, Section 9 of the Covenants states:

> The Building Envelope of each lot shall be located so that same is as
> far as reasonably possible from the Building Envelope on all other

contiguous Lots. In the event that a Building Envelop has not been established on all contiguous tracts then the Building Envelope shall be located as follows: (i) in a manner that will maintain the integrity of a rural ranch setting; (ii) be set back from any abutting Street a minimum of 100 feet; (iii) have a side yard set back a minimum of 100 feet; and (iv) have a rear yard set back a minimum of 100 fee. Once established, the Building Envelope shall not be modified nor changed without Residential ARC approval.

The Covenants give the Association's Architectural Review Committee (the ARC) "exclusive jurisdiction over all original construction on the Lots."

The Covenants also govern the types of structures that may be built. Article VII, section 3 provides, in part, that "[n]o detached garage or accessory building shall exceed one story in height without the written consent of the Residential ARC." Article VII, section 4 governs garages, driveways, and sidewalks. It provides:

Each Single Family Residence must have an attached or detached garage for a minimum of two (2) full size automobiles. Each Owner shall construct and maintain at his own expense a driveway from the garage of his or her residence to the abutting Street, including the portion of the driveway in the street easement, and the Owner shall repair at his expense any damage to the Street or drainage ditches occasioned by connecting the driveway thereto.

Article VII, section 19 addressed requirements of outbuildings:

No outbuilding or structure shall be permitted outside of the Building Envelope without prior written approval of the Residential ARC and must be located in such a manner as to be no nearer any street, or common area, than the rear of the primary residence. No more than three (3) outbuildings or other structures, temporary or permanent, will be allowed without approval of the Residential ARC.

The Covenants further state that the purpose of the Association is to, among other things, "providing for the maintenance and preservation of the Area of Common Responsibility and the facilities of the Association and architectural control of the Lots." The Covenants vested the Association's Board with rule-making authority to "exercise business judgment and reasonableness on behalf of the Association" in adopting, amending, repealing, and enforcing the rules and regulations necessary to implement the Covenants.

The Ammermans purchased Lot 28, a 30.6-acre parcel, in May 2006. The Wilsons purchased lot 29, a 16.8-acre parcel of land, several months later. Lots 28 and 29 are contiguous. Each lot had a predetermined Building Envelope within which the owner was permitted to construct a residence and other buildings. The Ammermans began to develop their property, Lot 28, immediately after they purchased it. In 2007, their barndominium was approved by the ARC with a changed Building Envelope, and the residence was completed in November of 2008. In June and July 2012, the Ammermans constructed a shed outside of Lot 28's building envelope and, in January 2014, they added onto their shed outside Lot 28 in front of their barndominium.

Subsequently, in 2015, the Wilsons began the process of building their retirement home on Lot 29, with ARC approval. The Ammermans investigated the proposed building location and came to believe that the Wilsons residence violated

the restrictive covenants governing the Community. Specifically, they alleged, but have not shown, that the Wilson's building plan is not within the 2006 predetermined Building Envelope.

## A. The Ammermans' Suit Against the Association and the Wilsons and Request for a Declaratory Judgment and Temporary Injunction

On January 11, 2016, the Ammermans filed suit against the Association and the Wilsons. They alleged causes of action for breach of contract and declaratory judgment, asserting that the Association and the Wilsons had violated Article VI, Section 9 of the Covenants regarding the location of the building envelope for the Wilson's lot. The Ammermans sought a declaratory judgment "regarding the construction and validity of the Covenants in order to determine the rights, status, and legal relations of the Ammermans and Defendants." The Ammermans also sought a temporary injunction to prevent the Wilsons from building their proposed residence while litigation proceeded. The Ammermans' subsequently amended their petition to add a cause of action against the Association for failing "to comply with their duties" and "by exercising their discretionary authority in an arbitrary and capricious manner."

The Association and the Wilsons answered, denying all of the Ammermans' claims and asserting various affirmative defenses, including that the Ammermans' claims were barred by the statute of limitations.

The trial court held a hearing on the Ammermans' request for a temporary injunction. Clay Ammerman testified that he and his wife were among the first residents to purchase lots in the community, that they had purchased Lot 28 because of its unique location and secluded nature, and that they immediately began construction of their primary residence. Ammerman acknowledged that he was aware at the time he purchased his lot of potential locations where his neighbors, the Wilsons, could build a residence on Lot 29. However, he testified that their proposed building location, or building envelope, violated the Covenants because their approved building site was not as far as reasonably possible from his residence and would affect the resale value of his home. Clay Ammerman also acknowledged that he had sought and obtained approval to move his own building envelope when building his home in 2007.

On February 9, 2016, the trial court denied the request for injunctive relief.

**B.    The Wilsons' April 28, 2016 Counterclaim and the Ammermans' April 29, 2016 Amended Petition and Application for Permanent Injunction**

On April 28, 2016, the Wilsons filed a counterclaim against the Ammermans for breach of contract and for a declaratory judgment, asserting that the Ammermans had breached the Covenants "by constructing their shed [and by] constructing a car-port and failing to construct a garage."[2]  The Wilsons asked that

---

[2]    The Wilsons referred to the requirements of the Covenants generally in the original counterclaim but did not identify the particular provisions by number.

7

the trial court declare their rights with respect the Covenants and find that the Ammermans had breached them.

The Ammermans did not file an answer to the Wilsons' counter-petition. However, the next day, April 29, 2016, they filed an amended petition and an application for permanent injunction containing additional information regarding the parties. The Ammermans continued to assert that the Wilsons and the Association had violated Article VI, Section 9 of the Covenants, specifically the part stating that "[t]he Building Envelope of each lot shall be located so that same is as far as reasonably possible from the Building Envelope on all other contiguous lots."

## C.    The Association's and the Wilsons' May 9, 2016 Joint Motion for Summary Judgment

On May 9, 2016, the Association and the Wilsons filed a joint traditional motion for summary judgment on the Ammermans' claim that they had both breached Article VI, Section 9 of the Covenants. They argued that when the Ammermans and the Wilsons purchased their lots in 2006, the Wilsons' lot, Lot 29, "already had a pre-determined Building Envelope that was set by the [Association] and the developer of the subdivision." They argued: "Despite the

Their complaints relate to Article VII, section 4's requirement that each residence have a garage; Article VII, section 19's requirement that outbuildings be placed behind the primary residence; Article VI, section 3's requirement that an owner obtain written approval from the ARC for all improvements; and Article VI, section 9's provisions regarding the building envelope.

undisputed fact that the Ammermans were aware of the location of Lot 29's Building Envelope in 2006, they have waited nearly a decade and until the eve of the construction of the Wilsons' home to file a frivolous suit complaining about information they have been in possession of since at least May 2006." They asserted that the Ammerman's claims were barred by the statute of limitations.

In the alternative, the Association and the Wilsons argued in their traditional motion for summary judgment that the "governing documents give the [Association] and [ARC] discretion to determine the placement of all Building Envelopes as well as the placement of structures within the Building Envelopes," and thus the Ammermans could not raise a genuine issue of material fact on their claims that either the Association or the Wilsons had breached Article VI, section 9 of the Covenants.

The Association and the Wilsons supported this motion for summary judgment with the affidavit of Jack Owen, the president of the Association and the custodian of the Association's records. He averred, in relevant part, that the Ammermans purchased Lot 28 in May 2006, that the Wilsons purchased Lot 29 in September 2006, and that "[a]s of January 3, 2016, the Wilsons were given approval to begin construction of their home." Owen stated, "When determining approval for the Wilsons, the [Association] and ARC determined that the Wilsons'

9

Building Envelope is as far as reasonably possible from all other contiguous owners in the [Community]."

The Association and the Wilsons also included the transcript from the temporary injunction hearing as support for the motion for summary judgment. They cited Clay Ammerman's testimony that he was aware of the potential building sites for the Wilsons' home when he purchased his lot in 2006, his acknowledgment that the previously proposed building cite for the Wilsons' home was "closer to [his] primary residence . . . than the envelope where the Wilsons" had been approved to build their home in 2016, and that Clay Ammerman was aware that people had to build within their designated building envelope when he purchased his lot in 2006.

The motion for summary judgment was also accompanied by the declaration of Johnny Wilson, in which he stated that "each individual lot was listed for sale with a Building Envelope that was predetermined by the HOA [the Association] and the ARC," and, thus, when he and his wife purchased their lot in September 2006, "the Building Envelopes for all of the lots, including Lot 29, were already set. As such, we were not only aware of Lot 29's Building Envelope, but also our neighbor's, Clay and Erin Ammerman's . . . Building Envelope." He went on to state that "one of the reasons we ultimately decided to purchase Lot 29 was because of the Building Envelope." He stated that he and his wife had owned Lot

29 for nearly ten years before deciding to build a retirement home, and the plans and specifications for the home that were approved by the Association and ARC "showed that the home would be located inside of our Building Envelope." He stated, "Notably, we have not ever requested that our Building Envelope be modified or changed and so, it has remained in its original location for ten years."

The Association and the Wilsons also presented the trial court with a copy of the Covenants and other documents governing the Community, a copy of the letter from the ARC approving the Wilsons' building plans, and a copy of a letter from the ARC to the Ammermans explaining its decision to approve the location of the Wilsons' home. The letter to the Ammermans stated, in part, "Regarding the ARC decision to approve the location of the Wilson's home site on Lot 29 the ARC has placed considerable effort to address your concerns as well as the effect on the Wilsons of moving their building envelope as you have suggested." The ARC specifically noted that "the Wilsons' requested home site on Lot 29 is within the 'as reasonably possible' distance required by our [Covenants]" and that the original building site "was closer to the cul-de-sac than the Wilsons have requested, [and] therefore the building envelope has already been set back."

In their response to the motion for summary judgment, the Ammermans asserted generally that after they became aware of the Wilsons' building location in January 2016, they investigated and discovered "that the Wilsons were building

11

their residence in a location different than what was originally platted by the developer," referring apparently to the fact that the Wilsons had chosen a site for their home within their building envelope that was different from the building site originally noted by the developer. The Ammermans contended, however, that the Wilsons' "building envelope was changed and/or modified based on the December 16, 2015 building plans submitted by the Wilsons," citing the letters from the ARC approving the Wilsons' building and explaining its decision to the Ammermans as evidence to support their contention. The Ammermans did not dispute that a four-year statute of limitations applied to their claims for breach of contract and declaratory judgment, but they argued that their limitations period did not begin to run until January 2016 when they first received notice from the ARC that it had approved "a new build location in breach of the Covenants[.]" The Ammermans also asserted that the discovery rule applied to their claims because their injury was inherently undiscoverable until the Wilsons began to develop their property.

The Ammermans supported their response with, among other documents, the affidavit of Clay Ammerman, in which he provided details of the building of his own residence. He stated, "During the development of our Lot, we were required by the then existing ARC to incur substantial expenses planting foliage to screen off our property from the then platted build location on Lot 29." He further averred that, based on the details of the Wilsons' construction, the "recently approved build

12

location renders the foliage we were required to plant useless, as it does not provide any screening where the Wilsons are now approved to build." He stated that the Wilsons' home would be visible from the entrance to his home and that the build site "is a mere 100 yards from our property line, resulting in the Wilsons' newly approved building location being not as far as reasonably possible from our building envelope."

**D.    The Ammermans' June 1, 2016 Amended Petition and June 14, 2016 Motion for Summary Judgment on the Wilsons' Counterclaim**

On June 1, 2016, while the Association's and the Wilson's joint traditional motion for summary judgment was still pending, and before the trial court ruled on their original claims regarding Article VI, Section 9 of the Covenants, the Ammermans filed a second amended petition, asserting new claims for breach of contract and declaratory judgment against the Association. In their amended petition, the Ammermans contended again that the Association and the Wilsons had breached Article VI, Section 9 of the Covenants, and they added claims that the Association breached Article II, Sections 1 and 4, Article VI sections 3, and Article VII, section 3 in connection the approval of the Wilsons' building site. The Ammermans asked the trial court to declare their rights with respect to the additional covenants as well as with respect to Article VI, Section 9 pursuant to the Declaratory Judgments Act, Texas Civil Practice and Remedies Code section 37.004(a).

13

The Ammermans also asserted that the Association had violated Property Code sections 202.004 and 215.009 by approving the Wilson's building plans. Section 202.004 provides, in relevant part:

> (a)    An exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court decides by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory.

TEX. PROP. CODE ANN. § 202.004 (West 2014). Likewise, section 215.009 provides that "[a] property owners' association may enforce its restrictive covenants . . . by exercising discretionary authority relating to a restrictive covenant unless a court has determined by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory. . . ." *Id.* § 215.009 (West 2014).

On June 14, 2016, the Ammermans filed their own motion for summary judgment asserting that the Wilsons' counterclaims were barred by the statute of limitations and laches. The Wilsons responded, asserting that they had no way to know that the Ammermans had not complied with the Covenants until Ammerman testified at the temporary injunction hearing regarding their lack of written approval by ARC for their improvements and other deviations from the Covenants.

14

**E.    The Trial Court's July 6, 2016 Order on the Association's and the Wilsons' Traditional Motion for Summary Judgment**

On July 6, 2016, the trial court granted in its entirety the Association's and the Wilsons' joint traditional motion for summary judgment on the Ammermans' claims that the Wilsons and the Association had breached Article VI, section 9 of the Covenants. It specifically ruled that the Association and the Wilsons had established both that the statute of limitations barred the Ammermans' breach of contract and declaratory judgment claims and that the Association and the Wilsons had established as a matter of law that neither had violated Article VI, Section 9 of the Covenants.  The trial court also awarded reasonable and necessary attorneys' fees to the Wilsons and the Association in an amount to be determined.

**F.    The Trial Court's July 18, 2016 Order on the Ammermans' Motion for Summary Judgment**

On July 18, 2016, the trial court granted the Ammermans' motion for summary judgment on the Wilsons' counterclaims on limitations grounds in part and denied it in part. The trial court ruled that the Ammermans' "claim in the Motion that the statute of limitations has passed on [the Wilsons'] [counter-claims] for breach of contract on the construction of the Barndominium is hereby GRANTED." The trial court denied summary judgment on the Wilsons' remaining breach of contract counterclaims, specifically denying the portion of the Ammermans' motion arguing that claims involving construction and modification

of the equipment building and the declaratory judgment claims were barred by the statute of limitations. These claims, therefore, continued to go forward.

**G.     The Association's August 10, 2016 Second Traditional Motion for Summary Judgment**

On August 10, 2016, the Association filed a second traditional motion for summary judgment to address the additional claims raised by the Ammermans in their June 1, 2016 amended petition, before the July 6, 2016 summary judgment was entered, regarding discovery of the Association's and the Wilsons' alleged breaches of the Covenants, and also regarding the Association's alleged breach of Property Code sections 202.004 and 202.009. The Association sought dismissal of all of the Ammermans' claims against it, including both the Ammermans' claims related to discovery of the Wilsons' alleged breaches of the Covenants within the statute of limitations, on which the trial court had already ruled, and the Ammermans' new claims under the Property Code. The Association set out detailed arguments asserting that it had not breached any provisions of the Covenants. And it asserted that the Ammermans' related declaratory judgment claims failed for the same reasons as their breach of contract claims.

The Association argued, again, that, as decided by the trial court's July 6, 2016 summary judgment order, the Ammermans were aware of the location of the pre-determined Building Envelope on the Wilsons' property in 2006. Thus, any complaints that the Association violated Article VI, Section 9 or any other

provisions of the Covenants in determining or approving the location of the Wilson's Building Envelope were barred by the statute of limitations for breach of contract. The Association further argued that the discovery rule did not apply because the summary judgment evidence established that Clay Ammerman was aware of the Wilsons' potential building locations in 2006 and that he was aware that owners could build their home anywhere within the predetermined building envelope that was designated prior the Ammermans' and Wilsons' purchase of their respective lots in 2006.  In the alternative, the Association argued in its second motion for traditional summary judgment that it did not breach any of the provisions asserted by the Ammermans in their June 1 amended petition.

Finally, the Association moved for summary judgment on the Ammermans' claim that the Association had violated Property Code sections 202.004 and 202.009.  It argued that section 215.009 was not applicable in this case.  The Association further argued in its motion for summary judgment that it did not violate the Property Code by acting arbitrarily or capriciously, in violation of section 202.004, when it approved the Wilsons' building plans under Article VI, Section 9. The Association cited Property Code section 202.004(a), creating a presumption that a property owners' association's exercise of discretion "is presumed reasonable unless the court decides by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or

17

discriminatory." *See* TEX. PROP. CODE ANN. § 202.004(a). The Association argued

that the Ammermans had failed to rebut this presumption.

**H.     The Trial Court's November 21, 2016 Order on the Association's Second Traditional Motion for Summary Judgment**

On November 21, 2016, the trial court granted summary judgment against

the Ammermans and dismissed all their claims against the Association in response

the Association's second traditional motion for summary judgment.[3]

**I.      The Trial Court's December 13, 2016 Order Severing the Cases and the Association's December 29 Notice of Appeal in Cause No. 16-01-23529-A, Resulting in Appellate Cause No. 01-17-00015-CV**

On December 13, 2016, the trial court severed all of the Ammermans'

claims against the Association into a separate cause of action, stating "that all

claims and causes of action asserted by [the Ammermans] against [the Association]

are hereby severed into a separate cause under a new cause number[,]" namely

cause number 16-01-23529-A. This severance order, combined with the trial

court's July 6, 2016 order, granting the Association's and the Wilsons' joint

motion for summary judgment, and the November 21, 2016 order, granting the

Association's second traditional motion for summary judgment, constituted a final

ruling of the trial court with respect to the Association. It left pending only the

Wilsons' counterclaim for declaratory judgment and breach of the Covenants

---

[3]     The Ammermans do not challenge the trial court's ruling dismissing their claims under Property Code Section 215.009 on appeal.

18

against the Ammermans insofar as the counterclaim regarded later improvements made to the Ammermans' property.

Accordingly, the trial court's summary judgments in favor of the Association on the Ammermans' claims against it became the trial court's final judgment with respect to the Association.

On December 29, 2016, the Ammermans filed a notice of appeal in the severed case, trial court cause number 16-01-23529-A, resulting in appellate cause number 01-17-00015-CV. The notice of appeal challenged both the July 6, 2016 order granting the Joint Motion for Summary Judgment and the November 21, 2016 order granting the Association's second Motion for Summary Judgment, and it noted that those judgment were made final as to the Association when the claims against the Association were severed from those of the Wilsons.

**J.** **The Wilsons' December 27, 2016 Amended Counterclaim Against the Ammermans; the Wilsons' March 10, 2017 Traditional Motion for Summary Judgment on Their Counterclaim; and the Ammermans' April 4, 2017 Response**

On December 27, 2016, the Wilsons filed an amended counterclaim asserting claims for breach of contract and declaratory judgment against the Ammermans, again based on allegations that the Ammermans breached the Covenants by failing to get written approval for their improvements, constructing their shed in a location that violated the restrictions, constructing a car-port, and failing to construct a garage.

On March 10, 2017, the Wilsons filed a traditional motion for summary judgment on their counterclaim seeking a declaratory judgment that the Ammermans had violated Article VI, sections 3 and 9, and Article VII, sections 4 and 19 of the Covenants by failing to include a garage as part of their primary residence and by building the equipment shed without written ARC approval outside their building envelope and placing it somewhere besides the rear of the property. The Wilsons sought reasonable and necessary attorneys' fees pursuant to the Declaratory Judgments Act.

As summary judgment evidence, the Wilsons included a transcript of Clay Ammerman's testimony at the temporary injunction hearing. The Wilsons contended that Clay Ammerman admitted at the hearing that his residence lacked a two-car garage; that he had built a shed on his property without obtaining written approval from the Association and that the shed was built in front, rather than behind, the primary residence; and that the shed is located outside the Ammermans' building envelope and was located less the one-hundred feet from the property line. Specifically, the Wilsons cited Clay Ammerman's testimony that his home had a "porte cochere" and his statement, "I don't need a garage. It is not visible from any street or common area or adjoining property." They also point to Clay Ammerman's testimony that he got verbal approval to build his shed and his testimony that he built the shed in the only location that he could have built it,

20

which he acknowledged was not in his rear yard. The Wilsons also provided a survey showing that the shed is less than 100 feet from the Wilson-Ammerman property line and thus was placed inside the 100-foot setback required by the Covenants.

The Wilsons asserted that all of these conditions constituted violations of the Covenants, and because Ammerman admitted to the violations, no genuine issues of material fact existed and the Wilsons were entitled to summary judgment.

In their Response to the Wilson's Motion for Summary Judgment on their counterclaim, filed April 4, 2017, the Ammermans asserted that the evidence, including Clay Ammermans' testimony, established that their residence contained "garage space far larger than the 600 square feet required by the [Covenants]" and pointed to garage space included on their property as containing "both an [eight foot] roll-up metal door and a [fourteen foot] set of double cedar plank doors for larger vehicles." They also pointed to the fact that their residence included a porte-cochere that satisfied the Covenant's requirement that each residence include a garage. The Ammermans also cited to the fact that they obtained written approval for the residential building.

Regarding the Wilsons' claims that the Ammermans built the shed without written approval, the Ammermans pointed to e-mail correspondence from members of the ARC approving the construction of the shed. They argued that, at a

21

minimum, the e-mails raised a fact question regarding whether the Ammermans obtained proper written approval to build the shed. They also argued that, although the Covenants generally require that sheds and other storage buildings should be placed behind the primary residence, the Covenants have a specific condition that lake-front properties—like the Ammermans'—may not have storage buildings placed in the rear yard. They also argued that, to the extent their property varied from the requirements of the Covenants, the e-mails approving the construction of the shed raised at least a fact question that they were granted a variance by the Association and, thus, were not in violation of the Covenants.

In addition to floor plans showing the presence of a garage and a porte-cochere in the Ammermans' residence, the Ammermans provided written documentation and emails showing approval of their building plans and affidavits of other Community residents who stated that building approvals were done verbally or by email, as had occurred in the Ammermans' case.

## K.     The Trial Court's May 16, 2017 Final Judgment and the Wilsons' June 14, 2017 Notice of Appeal in Cause Number 16-01-23539, Resulting in Appellate Cause Number 01-17-00448-CV

In an order signed May 16, 2017, the trial court granted the Wilsons' motion for summary jdgment, declaring that the Ammermans were in violation of Article VI, sections 3 and 9, and Article VII, sections 4 and 19 of the Covenants due to their lack of a garage and the construction of the equipment shed. The trial court

awarded the Wilsons reasonable and necessary attorney's fees, thereby disposing of all of the Wilsons' remaining claims against the Ammermans. The trial court's May 16, 2017 order in cause number 16-01-23529 thereby became the court's final judgment on all of the Wilsons' claims against the Ammermans and all of the Ammermans' claims against the Wilsons.

On June 14, 2017, the Ammermans filed a Notice of Appeal against the Wilsons, resulting in appellate cause number 01-17-00448-CV. In this notice of appeal, the Ammermans again listed the trial court's November 21, 2016 order granting the Association's second motion for summary judgment, which was also included in the then-pending appeal in appellate cause number 01-17-00015-CV, and they listed the trial court's May 16, 2017 final order granting the Wilsons' motion for summary judgment on their declaratory judgment counter-claim against the Ammermans.

## Summary Judgment on the Ammermans' Claims

In their first and second issues, the Ammermans argue that (1) the trial court erred in granting summary judgment dismissing their claims on statute of limitations grounds because they presented some evidence raising a fact issue regarding when their cause of action for breach of the Covenants and for a declaratory judgment against the Wilsons and the Association accrued and when they could have discovered their cause of action; and (2) the trial court erred in

23

granting summary judgment dismissing their claims on the ground that the Association and the Wilsons had conclusively proved that they did not violate the relevant restrictive covenants because they presented some evidence that the Association acted arbitrarily and capriciously in approving the Wilsons' building plans. We address these issues together.

## A.     Standard of Review

We review summary judgments de novo. *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 258 (Tex. 2018). The movant must show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Oncor Elec.*, 539 S.W.3d at 258–59. A defendant is entitled to a traditional summary judgment if the defendant conclusively negates at least one essential element of each cause of action or conclusively proves all elements of an affirmative defense. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact to preclude summary judgment. *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam); *see also First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (stating that fact question exists if evidence rises to level that would enable reasonable and fair-minded people differ in their conclusions).

In reviewing the grounds for summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sommers for Ala. & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017). Here, because the trial court granted the challenged motions for summary judgment in their entirety, we must affirm a summary judgment if it is correct on any of the grounds asserted in the motions. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

Here, the Wilsons and the Association sought summary judgment on claims alleging breach of the Covenants. "[A]ny person entitled to benefit under the terms of a restrictive covenant may enforce it." *Moseley v. Arnold*, 486 S.W.3d 656, 662 (Tex. App.—Texarkana 2016, no pet.) (quoting *Girsh v. St. John*, 218 S.W.3d 921, 923 (Tex. App.—Beaumont 2007, no pet.); *see also Oyoque v. Henning*, No. 09-17-00018-CV, 2018 WL 1527892, at *3 (Tex. App.—Beaumont Mar. 29, 2018, no pet.) (mem. op.) (discussing standing to sue for violation of restrictive covenants). Restrictive covenants are construed using the general rules of contract construction. *Moseley*, 486 S.W.3d at 662 (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). "Courts must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement." *Pilarcik*, 966 S.W.2d at 478 (citing *Grain Dealers Mut. Ins Co. v. McKee*, 943 S.W.2d 455, 458

(Tex. 1997)); *see Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Restrictive covenants are "unambiguous as a matter of law if [they] can be given a definite or certain legal meaning." *Pilarcik*, 966 S.W.2d at 478 (quoting *Grain Dealers*, 943 S.W.2d at 458).

## B. Statute of Limitations

The Association and the Wilsons sought summary judgment in part on the ground that the Ammermans' suit was barred by the statute of limitations. The statute of limitations is an affirmative defense. TEX. R. CIV. P. 94. A defendant seeking summary judgment on the basis of an affirmative defense, such as limitations, bears the burden to conclusively establish that defense, including the accrual date of the cause of action. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When a cause of action accrues is a question of law. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2011). If the summary judgment movant establishes that the statute of limitations bars the action, the nonmovant must adduce proof raising a fact issue in avoidance of the statute of limitations. *KPMG Peat Marwick*, 988 S.W.2d at 748.

Breach of contract claims are subject to a four-year statute of limitations. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 203 (Tex. 2011). Because a declaratory judgment action is a procedural device used to determine

26

substantive rights, we must look to the legal remedy underlying the cause of action to determine the applicable limitations period. *Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex. App.—Austin 2008, pet. denied). Here, the Ammermans sought a declaratory judgment that the Association and the Wilsons violated the Covenants—the same basis as their breach of contract claim—and thus the statute of limitations is likewise four years. *See id.*

Generally, a cause of action accrues when facts come into existence that authorize a claimant to seek a judicial remedy, when a wrongful act causes some legal injury, or whenever one person may sue another. *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015); *B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 49 (Tex. App.—Houston [14th Dist.] 2016, no pet.). A breach of contract claim accrues when the contract is breached. *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015); *B. Mahler Interests*, 503 S.W.3d at 49. A cause of action under the Declaratory Judgment Act accrues when there is an actual controversy between the parties. *In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, no pet.).

The Ammermans asserted that the discovery rule applies in this case. The discovery rule defers accrual of a claim until the injured party learned of, or in the exercise or reasonable diligence should have learned of, the wrongful act causing the injury. *Cosgrove*, 468 S.W.3d at 36. The discovery rule is limited to

27

"circumstances where 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Id.* (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). An injury is not inherently undiscoverable when it is the type of injury that could be discovered through the exercise of reasonable diligence. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011).

It is the discovery of the injury and its general cause, not discovery of the exact cause in fact, that starts the running of the limitations period. *Bayou Bend Towers Council of Co–Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 743 (Tex. App.—Houston [14th Dist.] 1993, writ denied). "Knowledge of injury initiates the accrual of the cause of action and triggers the putative claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury or the full extent of it." *Exxon Corp.*, 348 S.W.3d at 209.

## C. Statute of Limitations on the Ammermans' Claims that the Association and the Wilsons Breached the Covenants

The Association and the Wilsons asserted, in their joint motion for summary judgment, that the Ammermans' breach of contract claim arising from the Wilsons' and the Association's alleged breach of Article VI, Section 9 of the Covenants with regard to the location of the Wilsons' building envelope was barred by the statute of limitations. The Association asserted an identical argument

28

in its second motion for summary judgment regarding the amended claims filed against it by the Ammermans. Thus, they bore the burden of establishing when the cause of action accrued. *See Rubio*, 185 S.W.3d at 846.

The Association and the Wilsons argued that the building envelopes were established by the Association and the developer prior to the sale of the lots, and thus the Ammermans knew of the location of the Wilsons' building envelope at the time both parties bought their lots in 2006; therefore, the Ammermans' claims for breach of Article 6, Section 9 of the Covenants are time-barred.

The Association and the Wilsons presented Johnny Wilsons' declaration indicating that the location of the Wilsons' building envelope—the three-acre parcel in which they are permitted to build any improvements to the lot—was set by the developer in 2006 and that this information was available to the Ammermans in May 2006 when they selected and purchased their own lot. Wilson also declared that he and his wife had never sought or obtained a modification of their building envelope. He declared that the building site approved by the Association was located within the building envelope set in 2006. The Association and the Wilsons also presented evidence, in the form of Clay Ammerman's testimony at the temporary injunction hearing, that Ammerman was aware of the Wilsons' potential building locations and that he also knew that each lot had a building envelope in which all improvements were to be constructed.

29

The Ammermans claims against both the Wilsons and the Association all arise from alleged facts surrounding the Associations' approval of the Wilsons' building site. The Ammermans claim that both the Wilsons and the Association violated Article VI, Section 9 of the Covenants in determining the Wilsons' building site. Artice VI, Section 9, which has three relevant provisions, states:

[1] The Building Envelope of each lot shall be located so that same is as far as reasonably possible from the Building Envelope on all other contiguous Lots. [2] In the event that a Building Envelop has not been established on all contiguous tracts then the Building Envelope shall be located as follows: (i) in a manner that will maintain the integrity of a rural ranch setting; (ii) be set back from any abutting Street a minimum of 100 feet; (iii) have a side yard set back a minimum of 100 feet; and (iv) have a rear yard set back a minimum of 100 fee. [3] Once established, the Building Envelope shall not be modified nor changed without Residential ARC approval.

Article VI, section 9. The Ammermans also asserted that the Associations' approval of the building site violated various other provisions in the Covenants requiring that the Association enforce the Covenants and maintain "architectural control of the Lots" (Article II, section 1), that the Associations' Board make and enforce such rules and regulations as are necessary to enforce the Covenants (Article II, section 4), that the ARC properly approve all building plans to meet certain construction standards (Article VI, section 3 and Article VII, section 3).

The Wilsons and the Association presented evidence that a building envelope was established on both Lot 28 and Lot 29 before the Ammermans purchased Lot 28 and the Wilsons purchased the contiguous Lot 29 in 2006. *See*

*Pilarcik*, 966 S.W.2d at 478 ("Courts must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement."). Thus, the Association and the Wilsons established that any alleged breach of the Covenants committed in determining the location of the Wilsons' building envelope accrued when the building envelope was designated in 2006 before they purchased their contiguous lots. *See Stowers*, 457 S.W.3d at 430 (cause of action accrues when facts come into existence that authorize claimant to seek judicial remedy); *Cosgrove*, 468 S.W.3d at 39 (breach of contract claim accrues when contract is breached).

Furthermore, the Association and the Wilsons established that any injury caused by the allegedly improper location of the Building Envelope as determined in 2006 was discoverable by the Ammermans in May 2006, when the Ammermans purchased their lot knowing the location of both their own building envelope and those of the other contiguous lots. *See Marshall*, 342 S.W.3d at 66 (holding that injury is not inherently undiscoverable when it could be discovered through exercise of reasonable diligence). Likewise, the claim for declaratory judgment seeking a declaration that the Association and the Wilsons violated the Covenants in approving the Wilsons' building envelope accrued in May 2006, when the Ammermans purchased the lot that gave them an interest in the designation of other building envelopes designated on nearby lots. *See In re Estate of Denman*,

31

362 S.W.3d at 144. However, the Ammermans did not file their suit until 2016. Because the statute of limitations for both the breach of contract claim and declaratory judgment claim is four years, the Ammermans' suit was time-barred. *See Exxon Corp.*, 348 S.W.3d at 203; *Nw. Austin Mun. Util. Dist. No. 1*, 274 S.W.3d at 836.

The Ammermans argue that the ARC approved a new building envelope sometime between 2006 and January 2016 and, thus, the cause of action did not accrue until January 2016, when the Wilsons marked the construction location for their home. Alternatively, the Ammermans argue that the discovery rule deferred accrual of their claim until they could have discovered that the building envelope had been relocated. *See Cosgrove*, 468 S.W.3d at 36. The Ammermans further argue that they raised a fact question regarding whether their cause of action was discoverable.[4]

The Ammermans support their arguments with evidence concerning the particular location of the Wilsons' proposed home site, such as portions of the testimony adduced at the temporary injunction hearing and admitted as part of the summary judgment record. They also cite the letter from the ARC explaining the

---

[4] The Ammermans also argue that they were prevented from obtaining discovery proving that the building envelope had been moved; however, they did not raise this as a ground for error or otherwise provide citations to the record or authorities to support their complaint. Thus any complaint of this nature is waived for failure to adequately brief it. *See* TEX. R. APP. P. 38.1(i).

reasons for approving the Wilsons' building site, noting that the current building location was "already set back" as compared to the previous site. The Ammermans argue that this was some evidence that the proposed location of the home site was changed sometime between 2006 and 2016. However, none of this evidence contradicts the evidence that the parties were aware of possible building locations in 2006, at the time they purchased their lots. And none of this evidence contradicts Johnny Wilsons' declaration that the approved building site was within the original building envelope. It does not indicate that the three-acre building envelope moved, nor does it indicate that the Wilsons' approved building site falls outside the building envelope established in 2006.

Critically, the Ammermans' argument misconstrues Article VI, section 9's second provision, which states, "In the event that a Building Envelop has *not* been established on all contiguous tracts then the Building Envelope shall be located as follows: (i) in a manner that will maintain the integrity of a rural ranch setting; (ii) be set back from any abutting Street a minimum of 100 feet; (iii) have a side yard set back a minimum of 100 feet; and (iv) have a rear yard set back a minimum of 100 fee." Here, the Building Envelope *was* established when the Ammermans and the Wilsons purchased their lots; therefore, by its plain language, this provision is inapplicable to the Ammermans' claims.

Instead, the third provision in Article VI, Section 9 applies to any changes made in the original envelope, namely, "Once established, the Building Envelope shall not be modified nor changed without Residential ARC approval." The Ammermans argue that the Wilsons and the Association improperly modified or changed the Wilsons' building envelope that was set in 2006, but they have failed to present any evidence to support their contention.

We conclude that the Wilsons and the Association established that they were entitled to summary judgment on limitations grounds with respect to the Ammermans' claims that they violated the Covenants. The Ammermans failed to raise a genuine issue of material fact regarding when their cause of action for breach of the Covenants accrued or on the application of the discovery rule. Accordingly, the grant of summary judgment on this ground was proper.[5]

We overrule the Ammermans' first issue.

---

[5] Because we affirm the trial court's grant of summary judgment on limitations grounds, we need not address the alternative grounds asserted by the Wilsons and the Association in their motions for summary judgment on these claims. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

**D. Summary Judgment on the Ammermans' Claim that the Association Violated Property Code section 202.004**

In their second issue, the Ammermans' claim that the Association's construction and application of the Covenants was arbitrary and capricious in violation of Property Code section 202.004.[6]

Section 202.004 provides:

(a) An exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory.

(b) A property owners' association or other representative designated by an owner of real property may initiate, defend, or intervene in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument.

(c) A court may assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation.

TEX. PROP. CODE ANN. § 202.004. This statute establishes a cause of action by "a property owners' association or other representative designated by an owner of real property," allowing such an entity to "initiate, defend, or intervene" in a suit affecting the enforcement of a restrictive covenant. *See id.* § 202.004(b); *Sierra*

---

[6] To the extent that the Ammermans' second issue on appeal also addresses the Association's purported breach of the Covenants, those claims were resolved on statute of limitations grounds, as discussed above. The Ammermans do not challenge the trial court's ruling dismissing their claims under Property Code section 215.009 on appeal.

*Crest Homeowners Ass'n, Inc. v. Villalobos*, 527 S.W.3d 235, 239 (Tex. App.—El Paso 2016, no pet.); *KBG Invs., LLC v. Greenspoint Property Owners' Ass'n, Inc.*, 478 S.W.3d 111, 119 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "Subsection (a) 'creates a rebuttable presumption that a property owners' association or other representative acts reasonably in exercising its discretionary authority.'" *Villalobos*, 527 S.W.3d at 239 (quoting *La Ventana Ranch Owners' Ass'n, Inc. v. Davis*, 363 S.W.3d 632, 647 (Tex. App.—Austin 2011, pet. denied)).

We first observe that nothing in the statutory language of section 202.004 indicates an intent by the legislature to create a cause of action by a homeowner against a homeowners' association, such as the one filed by the Ammermans here. *See* TEX. PROP. CODE ANN. § 202.004(b); *Villalobos*, 527 S.W.3d at 239. Furthermore, in its second motion for summary judgment, the Association argued that the Ammermans failed to present any evidence rebutting the statutory presumption created by section 202.004(a) that its exercise of discretion in approving the building envelope was reasonable.

The Ammermans argue that they raised a fact question as to whether the ARC's decisions allowing changes to the Wilsons' Building Envelope in violation of the Covenants were arbitrary and capricious. However, as discussed above, the Ammermans have presented no evidence that the building envelope was changed. Johnny Wilson declared that the approved building site is located within the

building envelope set by the developer in 2006, and the Ammermans have provided no controverting evidence.

We conclude that the Ammermans have failed to present any evidence that the Association ever approved a change to the Wilsons' envelope. They likewise failed to present any evidence rebutting the presumption that any exercise of discretion by the Association was reasonable. *See* TEX. PROP. CODE ANN. § 202.004(a).

We overrule the Ammermans' second issue.

**Summary Judgment on the Wilsons' Counterclaim Against the Ammermans for Violations of the Covenants**

In their third issue, the Ammermans argue that the trial court erred in granting summary judgment in favor of the Wilsons on their counterclaims for declaratory judgment, in which the Wilsons asserted that the Ammermans violated the Covenants.

**A.      Review of the November 21, 2016 Order in the Context of the Appeal Between the Ammermans and the Wilsons**

As a preliminary matter, the Wilsons argue that the Ammermans' "notice of appeal attempts to appeal the November 21, 2016 order," noting that "the Ammermans [have] already appealed this order in [the appeal between the Ammermans and the Association]." The Wilsons also argue that the Ammermans' notice of appeal filed in appellate cause number 01-17-00448-CV was untimely as

to the November 21, 2016 order. The Wilsons misconstrue the procedural posture of the case.

The trial court's November 21, 2016 order granted the Association's second traditional motion for summary judgment and dismissed the Ammermans' remaining claims against the Association. Neither the Association's second traditional motion for summary judgment nor the trial court's November 21, 2016 order granting that motion addressed any claims between the Ammermans and the Wilsons.

Subsequently, on December 13, 2016, the trial court severed all of the Ammermans' claims against the Association into a separate cause of action, making the trial court's orders regarding the claims against the Association final and appealable. *See Harris Cty. Flood Control Dist. v. Adam*, 66 S.W.3d 265, 266 (Tex. 2001) (per curiam) (judgment in severed cause that disposed of all claims between parties to appeal was final and appealable). The Ammermans filed a timely notice of appeal in the severed case against the Association on December 29, 2016, asserting that they were appealing the trial court's summary judgment rulings against them, including in the November 21, 2016 order. *See* TEX. R. APP. P. 26.1 (setting out time to file notice of appeal).

The claims between the Ammermans and the Wilsons remained pending in the trial court. On May 16, 2017, the trial court granted the Wilsons' motion for

summary judgment, rendering a declaratory judgment in their favor on their counterclaims against the Ammermans. This finally resolved all claims between the Ammermans and the Wilsons, and the Ammermans filed their notice of appeal twenty-nine days later on June 14, 2017. *See id.* In this notice of appeal, the Ammermans again listed the trial court's November 21, 2016 order as an order that they would be challenging on appeal. The Ammermans then filed an identical brief in both of their appeals.

The Wilsons assert that the Ammermans "now attempt to get a second bite at the apple by briefing the issues of the November 21, 2016 order that have nothing to do with the Wilsons." They argue, "Because the claims between the Ammermans and the Wilsons are not adjudicated in the November 21, 2016 order, review of that order is improper as the Wilsons are not subject to the November 21, 2016 order." The Wilsons further argue that "[e]ven if the Ammermans could file a notice of appeal as to an order related to different parties in a different appeal, the Ammermans' notice of appeal as to the November 21, 2016 order was untimely." The Wilsons assert that the November 21, 2016 order became final when the trial court severed the claims against the Association from the claims between the Ammermans and the Wilsons on December 13, 2016, and they further assert that the Ammermans' notice of appeal in the case against the Wilsons was not filed until June 14, 2017.

We agree that the November 21, 2016 order did not adjudicate any claims between the Ammermans and the Wilsons. We reviewed the propriety of the trial court's November 21, 2016 order in the context of the appeal in cause number 01-17-00015-CV between the Ammermans and the Association. Furthermore, the notice of appeal in the 01-17-00015-CV case was timely. The November 21, 2016 order became final on December 13, 2016, and the Ammermans' notice of appeal in that case, specifically including the November 21, 2016 order, was timely filed on December 29, 2016.

In the context of cause number 01-17-00448-CV, between the Wilsons and the Ammermans, the November 21, 2016 order is irrelevant because it did not adjudicate any claims between those parties, and we need not review that order to resolve any issues between the Ammermans and the Wilsons. Moreover, even if the Ammermans erred in listing the November 21, 2016 order in their notice of appeal for cause number 01-17-00448-CV, such an error would not deprive this Court of jurisdiction to consider the case because the Ammermans nevertheless filed a timely notice of appeal with the contents necessary to invoke the jurisdiction of this Court over the claims between the Wilsons and the Ammermans. *See* TEX. R. APP. P. 25.1(a) (providing that appeal is perfected when written notice of appeal is filed with trial court clerk), (b) (providing that filing of notice of appeal by any party invokes appellate court's jurisdiction over all parties

40

to trial court's judgment), (d) (providing that notice of appeal must contain, among other things, "the date of the judgment or order appealed from").

The trial court's various orders granting summary judgment in favor of the Wilsons became final on May 16, 2017, when the trial court rendered its order granting summary judgment in favor of the Wilsons on their counterclaims against the Ammermans, finally resolving all of the claims between the parties. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("[I]f a court has dismissed all of the claims in a case but one, an order determining the last claim is final."); *Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972)https://1.next.westlaw.com/Link/Document/FullText?findType=Y&serNum=1972133193&pubNum=0000713&originatingDoc=Id50e0d70199c11e7afe7804507f6db3f&refType=RP&fi=co_pp_sp_713_409&originationContext=document&transitionType=DocumentItem&contextData=(sc.Search) - co_pp_sp_713_409 (recognizing that interlocutory order becomes final for purposes of appeal when it merges into final judgment disposing of whole case). The Ammermans filed their notice of appeal twenty-nine days later on June 14, 2017. *See* TEX. R. APP. P. 26.1. The Ammermans' June 14, 2017 notice of appeal listed the orders about which they complain on appeal, and, thus, this is not a case in which a party is seeking review of an order or judgment not listed in the notice of appeal. *See* TEX. R. APP. P. 25.1(d) (requiring that notice of appeal identify order or judgment complained of). Rather, the Ammermans listed an

interlocutory order rendered by the trial court earlier in the litigation, but with respect to a later-severed party. The Wilsons point to no authority, nor could we find any, indicating that the inclusion in an appellant's notice of appeal of an order that would ultimately provide no relief to the appellant deprives an appellate court of jurisdiction over a timely-filed appeal. Moreover, we note that the matters that are irrelevant to the claims between the Ammermans and the Wilsons were also raised and addressed in the timely-filed appeal of the Ammermans' claims against the Association.

Accordingly, we hold that we have appellate jurisdiction to consider the Ammermans' third issue complaining that the trial court erred in granting summary judgment in favor of the Wilsons on their counterclaims for declaratory judgment. And we overrule the Wilsons' preliminary argument to the extent they argue that the Ammermans' notice of appeal against them was untimely.

**B. Statute of Limitations**

The Ammermans argue, in their third issue, that the statute of limitations bars the Wilsons' claims that the Ammermans violated the Covenants. However, the Ammermans never pleaded the affirmative defense of limitations.

Statute of limitations is an affirmative defense, and Texas Rule of Civil Procedure 94 requires a party to plead all affirmative defenses. TEX. R. CIV. P. 94; *Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 667 (Tex.

42

App.—Houston [14th Dist.] 2005, no pet.). Because the Ammermans never pleaded this affirmative defense, the trial court did not err in failing to dismiss the counterclaims on this ground. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991) (generally, summary judgment cannot be granted on unpleaded affirmative defense unless raised in motion for summary judgment and opposing party does not object to lack of pleading).

## C.     Genuine Issue of Material Fact

The Ammermans also argue in their third issue that "substantial questions of material fact persisted" with regard to the Wilsons' counterclaims, and, thus, "the granting of summary judgment in this matter was improper." *See Katy Venture, Ltd.*, 469 S.W.3d at 163 (holding that if movant meets its summary judgment burden, nonmovant then bears burden to raise genuine issue of material fact precluding summary judgment).

In their motion for traditional summary judgment, the Wilsons argued that they were entitled as a matter of law to a declaration that the Ammermans violated the Covenants by building a residence without a garage and by building a shed outside their building envelope and without proper written approval. They argued that Clay Ammerman admitted to the violations of the Covenants in his testimony at the temporary injunction hearing. The trial court ultimately found that the Ammermans' breached the Covenants as a matter of law because (1) their primary

residence lacked a two-car garage; (2) they constructed an equipment shed on Lot 28 without written approval of the ARC; (3) the equipment shed on Lot 28 was not located behind the primary residence; and (4) the equipment shed on Lot 28 was located outside the Building Envelope and within the 100-foot setback at the property line.However, the Ammermans cited other portions of that same record indicating that the Ammermans believed they had acted within the scope of the Covenants at all times. For example, Clay Ammerman testified that he had a "porte cochere" and that he did not need a garage, but he did not affirmatively testify that his property lacked a garage in violation of the Covenants. The Ammermans also presented summary judgment evidence that their home had garage space and that their primary residence was approved by the ARC in writing.

Regarding the alleged violations for the building of the shed, Clay Ammerman testified at the temporary injunction hearing that he got verbal approval to build his shed and that he built the shed in the only location that he could have built it, which he acknowledged was not in his rear yard. This testimony does not constitute an admission that the Ammermans failed to get written approval, as the Wilsons claim. Furthermore, the Ammermans submitted summary judgment evidence in the form of emails from ARC members approving the building of the shed—including its location as being outside the original Building Envelope, within the 100-foot setback, and not being located behind the

primary residence. The Ammermans presented affidavits from other homeowners averring that the Association's practice was to provide the required approvals either verbally or through emails such as those provided to the Ammermans here.

The Ammermans also pointed to the copies of the Covenants themselves, which provided exceptions to the general rule that utility buildings must be located behind the primary residence by stating that lake-front properties—like the Ammermans'—may not have storage buildings placed in the rear yard. The Ammermans also argued that, to the extent their property varied from the requirements of the Covenants, the ARC was authorized to approve construction that otherwise violated the covenants and that the e-mails approving the construction of the shed raised at least a fact question that they were granted a variance by the Association and, thus, were not in violation of the Covenants.

Thus, although the trial court concluded that the Ammermans were in violation of the Covenants because their primary residence lacked a two-car garage, the Ammermans provided more than a scintilla of evidence indicating that their primary residence contained an appropriate garage or the equivalent of a garage, in the form of a porte cochere, that was approved by the ARC in writing. The Ammermans also provided emails raising, at the least, a fact question regarding whether they had obtained written approval from the ARC to construct their shed. The e-mails indicated that ARC committee members approved the

shed—including its location—prior to the Ammermans' beginning construction. Furthermore, the Covenants themselves indicated that lake-front properties may not have storage buildings in the rear yard and that the ARC had authority to approve building plans even if they varied from the requirements of the Covenants.

We conclude that the Ammermans presented more than a scintilla of evidence raising a fact-issue regarding whether their primary residence and shed violated the Covenants. Accordingly, the trial court erroneously granted summary judgment on the Wilsons' counterclaims against the Ammermans. *See* TEX. R. CIV. P. 166a(c); *Oncor Elec.*, 539 S.W.3d at 258–59.

We sustain the Ammermans' third issue.

## Conclusion

We affirm the judgment of the trial court in appellate cause number 01-17-00015-CV, dismissing the Ammermans' claims against the Association. We further affirm the portion of the trial court's judgment dismissing the Ammermans' claims against the Wilsons in appellate cause number 01-17-00448-CV. We reverse the portion of the trial court's judgment granting summary judgment on the Wilsons' counterclaims against the Ammermans and remand for further proceedings consistent with this opinion.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.